[No. E030278. Fourth Dist., Div. Two. Nov. 7, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
VICTOR MAURICE HOARD, Defendant and Appellant.

**COUNSEL**

Nancy E. Olsen, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Rhonda L. Cartwright-Ladendorf and Melissa Mandel, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GAUT, J.—**

### 1. *Introduction*

After confining two female employees to a back room, defendant robbed a Temecula jewelry store of $40,000 worth of jewelry and escaped in the car of one of the employees. A jury convicted defendant of armed robbery, aggravated kidnapping, carjacking, and various related special allegations. In addition, the court found defendant had incurred three previous strike convictions. The court sentenced defendant to a total indeterminate sentence of 45 years to life.

Defendant appeals, challenging the two convictions for kidnapping to commit robbery and the conviction for carjacking for insufficiency of evidence. We hold that defendant's movement of the victims was merely incidental to the robbery and did not increase the risk of harm to them. We reverse the convictions for aggravated kidnapping but affirm the conviction for carjacking even though it differs somewhat from the more typical carjacking scenario where a victim is accosted in or near her car.

## 2. Facts

Joy Salem and Sarah Gibeson were employed by the Jewelry Mart. The owner, Roukan Hatter, had twice purchased jewelry from defendant.

Defendant entered the store shortly after it opened one Sunday afternoon. He displayed a gun and ordered the women to give him the key to the jewelry cases. He also demanded the keys to Gibeson's car. He directed the women into the office at the back, tied their ankles and wrists with duct tape, and taped their mouths. Then he began taking jewelry from the cases. When customers entered the store, he told them it was closed for maintenance or performing inventory.

Gibeson tried to call 911 on her cellular phone but she dropped the phone. Defendant returned to the office, threatened the women, and pulled the office phone out of the wall. After that, he left. After some other customers helped release the women, Gibeson saw her car had been taken.

## 3. Kidnapping to Commit Robbery

 Defendant argues that, even viewing the evidence most favorably to the judgment,[1] the evidence is insufficient to show the element of asportation required by Penal Code section 209, subdivision (d),[2] and to prove aggravated kidnapping, in this instance, kidnapping to commit robbery.

Section 209 applies "if the movement of the victim is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in, the intended underlying offense."[3] More simply, the movement must be more than incidental and must increase the inherent risk of harm.

The two-pronged test was derived from the California Supreme Court case of *People v. Daniels*,[4] in which two defendants committed a number of rapes. In each instance, the rapists moved the victims short distances and the court deemed the movements to be incidental: "[D]efendants had no interest in forcing their victims to move just for the sake of moving; their intent was to commit robberies and rapes, and the brief movements which they compelled their victims to perform were solely to facilitate such crimes. It follows, a

---

[1]*People v. Rayford* (1994) 9 Cal.4th 1, 23 [36 Cal.Rptr.2d 317, 884 P.2d 1369].

[2]All statutory references are to the Penal Code.

[3]Section 209, subdivision (b)(2).

[4]*People v. Daniels* (1969) 71 Cal.2d 1119, 1139 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677].

fortiori, that those movements were 'incidental to' the robberies and rapes . . . ."[5]

*Daniels* cited a line of New York authority, including a case discussing an example exactly like the present one: "The court recognized that 'Kidnapping is, by contemporary statutory standards, one of the most serious of crimes. In our era this crime has assumed particularly reprehensible forms.' [Citation.] But the court then turned to fundamentals, observing that 'In basic concept the crime of kidnapping envisages the asportation of a person under restraint and compulsion. Usually the complete control of the person and the secrecy of his location are means of facilitating extortion.' [Citation.] Noting the breadth of the statutory definition of kidnapping, the court reasoned that it 'could literally overrun several other crimes, notably robbery and rape, and in some circumstances assault, since detention and sometimes confinement, against the will of the victim, frequently accompany these crimes. Some of the definitions could apply alike to kidnapping and abduction. *It is a common occurrence in robbery, for example, that the victim be confined briefly at gunpoint or bound and detained, or moved into and left in another room or place.'* "[6] Additionally, the *Daniels* court mentioned the New York court's example of a robbery involving " 'the tying up of a victim in a bank and *his movement into another room*. In essence the crime remained a robbery although some of the kidnapping statutory language might literally also apply to it.' "[7]

Citing the Model Penal Code, the *Daniels* court recognized " 'the absurdity of prosecuting for kidnapping in cases where the victim is forced into his own home to open the safe, or to the back of his store in the course of a robbery.' "[8] Generally, brief movement inside the premises where a robbery is being committed is considered incidental to the crime and does not substantially increase the risk of harm otherwise present.[9]

*Daniels* concluded brief movement was "merely incidental" and did not "substantially increase the risk of harm" otherwise present: "Indeed, when in the course of a robbery a defendant does no more than move his victim around inside the premises in which he finds him—whether it be a residence, as here, or a place of business or other enclosure—his conduct generally will

---

[5]*People v. Daniels, supra,* 71 Cal.2d at pages 1130-1131.
[6]*People v. Daniels, supra,* 71 Cal.2d at page 1135.
[7]*People v. Daniels, supra,* 71 Cal.2d at page 1136.
[8]*People v. Daniels, supra,* 71 Cal.2d at page 1138.
[9]*People v. Daniels, supra,* 71 Cal.2d at page 1140; *People v. Mutch* (1971) 4 Cal.3d 389, 398-399 [93 Cal.Rptr. 721, 482 P.2d 633].

not be deemed to constitute the offense proscribed by section 209. Movement across a room or from one room to another, in short, cannot reasonably be found to be asportation . . . ."[10]

In re Earley,[11] a robbery case, followed Daniels. Earley repeated the two-pronged requirement that "movements of a victim can constitute kidnapping for the purpose of robbery (§ 209) only if the movements (1) are not merely incidental to the commission of the robbery and (2) substantially increase the risk of harm beyond that inherent in the crime of robbery."[12] Earley pronounced: "Brief movements to facilitate either robbery or robbery and rape are incidental thereto within the meaning of Daniels. [Citations.] On the other hand movements to facilitate the foregoing crime or crimes that are for a substantial distance rather than brief are not incidental thereto within the meaning of Daniels."[13] The Earley court then held that movement of 10 to 13 blocks to commit robbery was substantial and not " 'merely incidental' " "even though it may have been solely to facilitate the commission of the robbery."[14]

The Earley court qualified these statements in footnote 11: "There is no merit to an assertion by Earley that 'when the robber's intent is solely to facilitate the robbery the movement is merely incidental' thereto within the meaning of Daniels. . . . Although one definition of 'incidental' is 'nonessential' [citation], that manifestly was not the sense in which the word 'incidental' was used in Daniels. Movement across a room to facilitate a robbery might be essential to the commission of the robbery but be incidental thereto within the meaning of Daniels."[15] Applying Earley in the present case means that, although it may have been either useful or essential to the robbery to put the women in the back room of the jewelry store, it could still be considered incidental movement.

■ Finally, we arrive at People v. Rayford,[16] in which the court again repeated the two prongs comprising kidnapping for robbery, as identified in Daniels and Earley:

"Kidnapping for robbery, or aggravated kidnapping, requires movement of the victim that is not merely incidental to the commission of the robbery, and which substantially increases the risk of harm over and above that necessarily present in the crime of robbery itself. [Citations.] These two aspects are not mutually exclusive, but interrelated.

---

[10]People v. Daniels, supra, 71 Cal.2d at page 1140.
[11]In re Earley (1975) 14 Cal.3d 122 [120 Cal.Rptr. 881, 534 P.2d 721].
[12]In re Earley, supra, 14 Cal.3d at page 127.
[13]People v. Earley, supra, 14 Cal.3d at pages 129-130.
[14]In re Earley, supra, 14 Cal.3d at page 130.
[15]People v. Earley, supra, 14 Cal.3d at page 130, footnote 11.
[16]People v. Rayford, supra, 9 Cal.4th 1.

"As for the first prong, or whether the movement is merely incidental to the crime of robbery, the jury considers the 'scope and nature' of the movement. [Citation.] This includes the actual distance a victim is moved. However, we have observed that there is no minimum number of feet a defendant must move a victim in order to satisfy the first prong. [Citation.]

"In addition, we have since *Daniels, supra,* analyzed the question of whether the movement was incidental to the commission of the underlying crime by considering the context of the environment in which the movement occurred. [Citations.] Thus, in *Daniels,* the defendants, 'in the course of robbing and raping three women in their own homes, forced them to move about their rooms for distances of 18 feet, 5 or 6 feet, and 30 feet respectively.' [Citation.] We held that these brief movements were merely incidental to the commission of robbery. [Citation.] [¶] . . . [¶]

"The second prong of the *Daniels* test refers to whether the movement subjects the victim to a substantial increase in risk of harm above and beyond that inherent in robbery. [Citations.] This includes consideration of such factors as the decreased likelihood of detection, the danger inherent in a victim's foreseeable attempts to escape, and the attacker's enhanced opportunity to commit additional crimes. [Citations.]"[17]

In *Rayford,* the court ultimately held there was sufficient evidence of asportation when the victim of a rape was moved 105 feet at night from a parking lot to an area behind a wall and not visible from the street. The facts of *Rayford* differ significantly from the present case in which the movement occurred within the store where the robbery occurred.

Despite this line of cases, the lower courts have continued to grapple with the meaning of "merely incidental." Two recent cases involving kidnapping to commit rape confuse "incidental" with "necessary." In *People v. Salazar,*[18] a rapist dragged his victim 29 feet from a motel hallway into a motel bathroom. *Salazar* reasoned the rape could have been attempted in the motel hallway. Because movement was not necessary to commit the rape, it was not incidental.[19] Stated affirmatively, according to *Salazar,* necessary movement is incidental movement. But that equation is contrary to the

---

[17]*People v. Rayford, supra,* 9 Cal.4th at pages 12-14.
[18]*People v. Salazar* (1995) 33 Cal.App.4th 341 [39 Cal.Rptr.2d 337].
[19]*People v. Salazar, supra,* 33 Cal.App.4th at page 347.

accepted definitions of incidental as secondary, minor, subordinate, or nonessential.[20]

*Salazar* acknowledged there are many cases involving alleged kidnapping to commit robbery in which the California Supreme Court has followed *Daniels* and found movement was incidental.[21] In a footnote, *Salazar* tried to distinguish those cases, focusing on a perceived difference between robbery and rape: "Whereas the commission of a robbery may frequently require that a victim be moved to the property which is the object of the robbery, a rape involves solely an attack on the person and does not necessarily require movement to complete the crime."[22] This sentence does not make sense. Certainly, rape is more easily, if not necessarily, accomplished out of plain view than in a public hallway. It could be said rape may frequently require movement. It could also be correctly said a robbery does not necessarily require movement. More accurately, some robberies and rapes require movement and some do not. *Salazar*'s effort to distinguish between rape and robbery is not persuasive.

In *People v. Shadden*,[23] defendant attempted to rape a video store owner after dragging her nine feet into a small back room of the store. The court adopted *Salazar*'s reasoning that rape does not necessarily require movement and therefore movement was more than incidental.[24] Like *Salazar*, *Shadden* equates the meaning of "incidental" with "necessary:" "The jury could reasonably infer that the movement was not incidental to the attempted rape because Shadden only began the sexual attack after he moved her."[25] Then, in seeming contradiction, the *Shadden* court also observes that "when [defendant] closed the door, he enhanced his opportunity to rape and injure [the victim.]"[26] In other words, moving the victim to the back room facilitated the rape and thus, under *Daniels*, could properly be regarded as incidental to the main crime.[27]

In our view, incidental and necessary do not mean the same thing. The courts in *Shadden* and *Salazar* seem to have committed the error of ipse dixit, as when Humpty Dumpty told Alice, " 'When *I* use a word' . . . 'it

[20]Webster's New World Dictionary (3d college ed. 1991) page 682; Webster's Third New International Dictionary (1993) at page 1142.

[21]*People v. Salazar, supra,* 33 Cal.App.4th at page 347.

[22]*People v. Salazar, supra,* 33 Cal.App.4th at page 348, footnote 8.

[23]*People v. Shadden* (2001) 93 Cal.App.4th 164 [112 Cal.Rptr.2d 826].

[24]*People v. Shadden, supra,* 93 Cal.App.4th at page 169, citing *People v. Salazar, supra,* 33 Cal.App.4th at page 348, footnote 8.

[25]*People v. Shadden, supra,* 93 Cal.App.4th at page 169.

[26]*People v. Shadden, supra,* 93 Cal.App.4th at page 170.

[27]*People v. Daniels, supra,* 71 Cal.2d at pages 1130-1131.

means just what I choose it to mean—neither more nor less.' "[28] But we agree with Alice a word should mean what it says: "This prosaic notion is based on our abiding conviction that communication suffers when language says what it does not mean."[29]

■ Instead, we decline to apply the reasoning used in *Salazar* and *Shadden* and analyze the facts of this case under *Daniels*, *Earley*, and *Rayford*. Here defendant robbed the jewelry store by forcing the two employees to move about 50 feet to the office at the back of the store. Confining the women in the back office gave defendant free access to the jewelry and allowed him to conceal the robbery from any entering customers who might have thwarted him. Defendant's movement of the two women served only to facilitate the crime with no other apparent purpose.[30] Considering the particular circumstances of this crime, we conclude it was "merely incidental" to the robbery to confine the women in the back of the store.

We also decide the movement did not substantially increase the risk of harm to the women. In *Shadden*, the court said moving a victim out of the public view causes increased risk because it makes discovery of the crime less likely.[31] But many other cases have held that removal from the public view does not, in itself, substantially increase the risk of harm.[32] Furthermore, a rape victim is certainly more at risk when concealed from public view and therefore more vulnerable to attack. But in the present case, the victims may have been at less risk tied up in the back office where they could not try to thwart the robbery than had they remained at gunpoint in the front of the store. Nor is this a case in which "substantial movement of a victim, by force or fear . . . poses a substantial increase in the risk of psychological trauma to the victim beyond that to be expected from a stationary robbery . . . ."[33] In the *Nguyen* case, the victim was moved to five different locations over a period of hours,[34] not 50 feet for a few minutes.

We conclude the elements of aggravated kidnapping were not established and those two counts should be reversed.

---

[28]Carroll, Through the Looking-Glass and What Alice Found There (1872).

[29]*Rose v. Superior Court* (2000) 81 Cal.App.4th 564, 570 [96 Cal.Rptr.2d 843].

[30]*People v. Daniels, supra,* 71 Cal.2d at pages 1130-1131; *In re Earley, supra,* 14 Cal.3d at page 129.

[31]*People v. Shadden, supra,* 93 Cal.App.4th at page 170.

[32]*People v. Stanworth* (1974) 11 Cal.3d 588, 598 [114 Cal.Rptr. 250, 522 P.2d 1058], overruled on other grounds in *People v. Martinez* (1999) 20 Cal.4th 225, 237 [83 Cal.Rptr.2d 533, 973 P.2d 512]; *In re Crumpton* (1973) 9 Cal.3d 463, 467 [106 Cal.Rptr. 770, 507 P.2d 74].

[33]*People v. Nguyen* (2000) 22 Cal.4th 872, 886 [95 Cal.Rptr.2d 178, 997 P.2d 493].

[34]*People v. Nguyen, supra,* 22 Cal.4th at pages 874-876 and page 886, footnote 7.

### 4. *Carjacking*

" 'Carjacking' is the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence . . . against his or her will and with the intent to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession, accomplished by means of force or fear."[35] **(3)** Defendant asserts a carjacking was not proved because defendant did not take Gibeson's car from "her person or immediate presence," an area defined for the jury as being within her "reach, observation or control, so that he or she could, if not overcome by violence or prevented by fear, retain possession of the subject property."[36] Instead, defendant took Gibeson's keys from her while her car was parked outside the store in a parking lot.

Defendant relies on *People v. Medina*,[37] in which the court found there was a carjacking when the victim "was inside a motel room when his keys were forcibly taken and his nearby car was driven away."[38] The court sidestepped the issue of what constitutes "immediate presence" in the context of a carjacking because the victim had been lured away from his car by a trick.[39] But *Medina* offers no support to defendant here. Instead, it held: "The statute requires force or fear to be applied to the driver . . . clearly a confrontation must occur. . . . [But] the victim need not actually be physically present in the vehicle when the confrontation occurs."[40]

In a subsequent case, the appellate court concluded the crime of carjacking, like the crime of robbery, "may be established not only when the defendant has taken property out of physical presence of the victim, but also when the defendant exercises dominion and control over the victim's property through force or fear."[41]

Additionally, the People cite a number of federal cases, originating with *United States v. Burns*,[42] in which the courts have found that carjackings

---

[35]Section 215, subdivision (a).
[36]CALJIC No. 9.46.
[37]*People v. Medina* (1995) 39 Cal.App.4th 643 [46 Cal.Rptr.2d 112].
[38]*People v. Medina, supra,* 39 Cal.App.4th at page 648.
[39]*People v. Medina, supra,* 39 Cal.App.4th at pages 651-652.
[40]*People v. Medina, supra,* 39 Cal.App.4th at page 650.
[41]*People v. Gray* (1998) 66 Cal.App.4th 973, 985 [78 Cal.Rptr.2d 191].
[42]*United States v. Burns* (9th Cir. 1983) 701 F.2d 840.

occurred when the owner was forced to give up his car keys at an inside location and the car was taken from an outside location.[43]

In the present case, the elements of carjacking were established. Defendant took possession of Gibeson's car by threatening her and demanding her car keys. Although she was not physically present in the parking lot when he drove the car away, she had been forced to relinquish her car keys. Otherwise, she could have kept possession and control of the keys and her car. Although not the "classic" carjacking scenario,[44] it was a carjacking all the same.

### 5. *Disposition*

We reverse the convictions for aggravated kidnapping but affirm the carjacking and armed robbery convictions.

Ward J., concurred.

**RAMIREZ, P. J.,** Concurring and Dissenting.—Based on a misunderstanding of the law governing the asportation element of aggravated kidnapping, the majority overturns implied findings of fact by the jury that the movement of these victims was not incidental to the robberies and that movement increased their risk of harm.

The majority starts its analysis of the "not incidental" prong with *Daniels*.[1] Therefore, I will too.

It is important to note that *Daniels* involved three kidnappings for only the crime of robbery.[2] (*Daniels, supra,* 71 Cal.2d at p. 1122.) In each case, *the victim was moved in order for the fruits of the robbery to be obtained.* (*Id.* at pp. 1123-1125.)[3] As the majority notes, the *Daniels* court held, "[D]efendants had no interest in forcing their victims to move just for the sake of

---

[43]*U.S. v. Kimble* (11th Cir. 1999) 178 F.3d 1163; *U.S. v. Moore* (10th Cir. 1999) 198 F.3d 793.

[44]*People v. Medina, supra,* 39 Cal.App.4th at page 648.

[1]*People v. Daniels* (1969) 71 Cal.2d 1119, 1130-1131 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677] (*Daniels*).

[2]The defendants were not convicted of kidnapping for the purpose of rape.

[3]The same was true in *People v. Williams* (1970) 2 Cal.3d 894 [88 Cal.Rptr. 208, 471 P.2d 1008], where the victim was moved around a gas station and down the street alongside it, picking up items for the defendants and delivering them to a car the victim believed belonged to the defendants. (Accord, *People v. Killean* (1971) 4 Cal.3d 423 [93 Cal.Rptr. 742, 482 P.2d 654] [victim is moved throughout his apartment while the defendant searches for valuables in each room].) Thus, in *People v. Salazar* (1995) 33 Cal.App.4th 341 [39 Cal.Rptr.2d 337]

moving; their intent was to commit robberies and rapes, and the brief movements [18 feet, 5 to 6 feet and 30 feet] which they compelled their victims to perform were solely to facilitate such crimes. It follows, a fortiori, that those movements were 'incidental to' the robberies . . . within the meaning of *Cotton* [*v. Superior Court* (1961) 56 Cal.2d 459 [15 Cal.Rptr. 65, 364 P.2d 241] (*Cotton*)]." (*Daniels, supra*, 71 Cal.2d at pp. 1130-1131; maj. opn., *ante*, at p. 602.)[4]

In *Cotton, supra*, 56 Cal.2d at page 464, the California Supreme Court had held that movement which was "natural" to the target offenses was incidental to it.

The majority next discusses *Earley*, noting its holding, "Since the movement . . . [10 to 13 blocks] was substantial, it was not '. . . incidental to the commission of the robbery . . .' *even though it may have been solely to facilitate the commission of the robbery*." (*Earley, supra*, 14 Cal.3d at p. 130, italics added.) However, in concluding that the movement here was incidental to the robberies, the majority states, "[The] movement of the [victims] served only to facilitate the crime with no other apparent purpose." (Maj. opn., *ante*, at p. 607.) This clearly contradicts *Earley*'s holding.

The majority goes on to conclude that footnote 11 of *Earley* "qualifies" its holding. (Maj. opn., *ante*, at p. 604.) That footnote begins, "There is no merit to an assertion . . . that 'when the robber's intent is solely to facilitate the

---

(*Salazar*), Division One of this court noted that in these early cases, the movement was a necessary part of the robberies because the fruits of crimes could not be had without moving the victim from place to place. (*Id.* at p. 348, fn. 8.) The majority asserts that *Salazar*'s observation is nonsensical. (Maj. opn., *ante*, at pp. 605-606.) It is not.

[4]The majority cites language appearing in *Daniels* from a New York appellate court opinion that " ' "It is a common occurrence in robbery, for example, that the victim be . . . moved into and left in another room or place," ' " (maj. opn., *ante*, at p. 603, italics omitted), citing, as an example of incidental movement, tying a victim up in a bank and moving him to another room. (Maj. opn., *ante*, at p. 603.) In that opinion, the New York appellate court reversed convictions for kidnapping for robbery where the defendants forced the victims back into their car and drove them 27 blocks for 20 minutes, while relieving them of their possessions. (*Daniels, supra*, 71 Cal.2d at p. 1135.) *Daniels* also cited another New York appellate court decision reversing convictions for kidnapping where a pharmacist drugged his victims and transported them from Manhattan to Queens. (*Id.* at p. 1137.) However, when the California Supreme Court was confronted with a substantially shorter movement under similar circumstances (four short city blocks) in *People v. Thornton* (1974) 11 Cal.3d 738 [114 Cal.Rptr. 467, 523 P.2d 267], disapproved on other grounds in *People v. Flannel* (1979) 25 Cal.3d 668, 684, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1], the court upheld the conviction for aggravated kidnapping, concluding that the movement was not incidental to the crime. (*Thornton*, at p. 768.) Similarly, the following year, in *Earley*, the California Supreme Court concluded that forced movement of the victim in a car 10 to 13 blocks was not incidental to the robbery committed during it. (*In re Earley* (1975) 14 Cal.3d 122 [120 Cal.Rptr. 881, 534 P.2d 721] (*Earley*).)

robbery the movement is merely incidental' thereto within the meaning of *Daniels*. . . . [C]ases contain[ing] language . . . tending to support [this] assertion . . . reflect a misconception of the first prong of the *Daniels* test in that they fail to take into consideration whether the movement was brief . . . ." (*Earley, supra*, 14 Cal.3d at p. 130, fn. 11.) In other words, just because the robber could not have accomplished the crime in the manner he intended without the movement does not necessarily make the movement incidental. Contrary to the majority's conclusion, this language is entirely consistent with the holding in *Earley*, which ignores whether the movement "may have been solely to facilitate the . . . robbery" (*id.* at p. 130) and focuses on the distance the victim was moved.

The *Earley* footnote goes on to state, "Other cases contain language suggesting that movement is not '. . . incidental' to a robbery where the movement is 'necessary' or 'essential' to the commission of the robbery or 'an important part of [the defendant's] criminal objective, without [which] the crimes would not have been committed.' . . . Although one definition of 'incidental' is 'nonessential' . . . that manifestly was not the sense in which the word . . . was used in *Daniels*.[5] Movement across a room to facilitate a robbery might be essential to the commission of the robbery but be incidental thereto within the meaning of *Daniels*. Insofar as such cases are inconsistent with the views expressed herein they are disapproved." (*Earley, supra*, 14 Cal.3d at p. 130, fn. 11.) In other words, the defendant's intent to commit the kidnapping as, in his or her mind, a necessary component of the target offenses is not determinate of whether the movement is incidental. Contrary to the majority's conclusion, this portion of the footnote did not qualify the holding. It is entirely consistent with the latter's focus on the distance traveled, rather than the intended purpose of the movement.

Finally, the majority cites *People v. Rayford* (1994) 9 Cal.4th 1 [36 Cal.Rptr.2d 317, 884 P.2d 1369] (*Rayford*), whose holding deserves reiteration here, "As for . . . whether the movement is merely incidental to the crime of robbery, the jury considers the 'scope and nature' of the movement. [Citation.] This includes the actual distance a victim is moved. However, . . . there is no minimum number of feet a defendant must move a victim in order to satisfy th[is] . . . prong. [Citation.] [¶] In addition, we have since *Daniels* . . . consider[ed] the context of the environment in which the movement occurred. [Citations.] . . . [¶] In *Daniels*, we . . . stated . . . , 'We do not imply that the . . . [movement of the victim 15 feet] [is] controlling, i.e., that movements of th[at] *scope and nature* . . . could not support a conviction under [Penal Code] section 209 if the defendant's intent

---

[5]It is interesting, then, that this is precisely one of the definitions the majority adopts as the correct meaning of "incidental." (Maj. opn., *ante*, at p. 605.)

was to commit robbery. Such a case, when and if it arises, must be decided on its own facts. . . .' [Citation.]" (*Id.* at pp. 12-13.) According to *Rayford*, then, the amount of distance traveled, while remaining a valid consideration, is not the only one, but, rather, is part of the larger consideration of *the scope and nature of the movement and the context of the environment.*

Relying on a non-legal-dictionary definition of "incidental," the inappropriateness which I have already addressed,[6] the majority criticizes the holdings in *Salazar*, a decision of Division One of this court, and *Shadden*,[7] an opinion from the Second District, Division Six, equating "incidental" with "necessary." Although the majority fails to say so, these two are not the only cases equating the two terms. Division Two of the Second District did the same in *People v. Smith* (1995) 33 Cal.App.4th 1586, 1594 [40 Cal.Rptr.2d 31], as did Division Five of that court in *People v. Diaz* (2000) 78 Cal.App.4th 243 [92 Cal.Rptr.2d 682] (*Diaz*). I assume that the majority singles out *Salazar* and *Shadden* because the distances traveled in those cases (29 feet and nine feet) were considerably shorter than that here. However, they also missed *People v. Jones* (1999) 75 Cal.App.4th 616 [89 Cal.Rptr.2d 485] (2d Dist., Div. 4) (*Jones*) in which the victim was moved 10 feet less than these victims.

The majority offers no sound reason why the equating of "incidental" and "necessary" is insupportable. To the extent the majority suggests it conflicts with footnote 11 of *Earley*, it is incorrect. As stated before, that footnote addresses the defendant's intent, whereas *Salazar* and *Shadden* focus on whether the movement was beyond the bare minimum required to accomplish the target crime. Certainly, the equation is not inconsistent with *Cotton*'s notion that movement which is natural to the target offense is merely incidental to it.

Moreover, despite the majority's implication otherwise (maj. opn., *ante*, at p. 605), neither case relied *exclusively* on the equation of "incidental" and "necessary" to support its conclusion that the distance traveled was not incidental. *Salazar* held, "In *Cotton*, . . . [t]he [California Supreme C]ourt concluded [that] the kidnapping charge was unsupported because the movement was 'natural' under the circumstances of the assault and thus incidental. [Citation.] [¶] . . . In contrast to *Cotton*, the movement [here] was not natural to the crime. Salazar could have raped [the victim] on the walkway outside the motel room door and avoided moving her at all. The movement of [the victim] was not necessarily related to the rape crime itself; rather, a jury could reasonably conclude it was an essential part of Salazar's plan to

---

[6]See footnote 5, *ante*, and related text.
[7]*People v. Shadden* (2001) 93 Cal.App.4th 164 [112 Cal.Rptr.2d 826] (*Shadden*).

avoid detection and to make the crime easier to commit. . . [¶] . . . [T]he jury could find the movement crossed significant boundaries (from the public walkway into the motel room bathroom) and was not a necessary or a natural part of committing the rape. Thus, the movement was not incidental to the crime." (*Salazar, supra,* 33 Cal.App.4th at p. 347.) As is clear from the foregoing, *Salazar* did not rely exclusively on whether the movement of the victim was necessary or essential to the commission of the rape. It relied also on the crossing of significant boundaries, a point the majority does not assail as an improper consideration in assessing the scope and nature of the movement and the context of the environment under *Rayford.*

Similarly, *Shadden* did not rely exclusively on its equation of "necessary" and "incidental." It also held, "[The defendant] pulled off [the victim's] panties and pulled down his zipper after he dragged her to the back room and shut the door [but before taking four videotapes]. The jury could reasonably infer that the movement was not incidental to the attempted rape because [the defendant] only began the sexual attack after he moved her. [Citations.][8] [¶] . . . Where movement changes the victim's environment, it does not have to be great in distance to be substantial. [Citation.] [The defendant] slugged [the victim] and dragged [her] nine feet from an open area to a closed room. From these facts the jury could reasonably infer that the distance was substantial for [the victim] and it changed her environment." (*Shadden, supra,* 93 Cal.App.4th at p. 169.) Clearly, the *Shadden* court based its conclusion that the movement was not incidental on more than the basis the majority criticizes, and those remaining reasons are both unassailed by the majority and unassailable.

In *Diaz,* the court noted, "[R]elatively short distances have been found not to be incidental where the movement results in a substantial change in 'the context of the environment.' " (*Diaz, supra,* 78 Cal.App.4th at p. 247.) The defendant in *Diaz* had moved the rape victim "at least 150 feet" (*id.* at p. 248) from a spot next to a sidewalk bordering on a busy city street to behind a closed building in a darkened park. Relying on *Rayford, Jones* and *Salazar,* the *Diaz* court concluded that the movement was not incidental, thusly: "The defendant could have sexually assaulted the victim in the sidewalk area where he first accosted her . . . . He quite obviously moved [her] in order to complete the attack and to avoid detection. The scope and nature of the

---

[8]The majority finds "seeming contradiction" (maj. opn., *ante,* at p. 606) between this statement and the *Shadden* court's later conclusion that moving the victim to the back room increased her risk of harm because it made detection less likely and thus "enhanced his opportunity to rape and injure her." (*Shadden, supra,* 93 Cal.App.4th at p. 170.) However, there is no contradiction between the two statements, and the latter consideration is entirely proper in assessing the increased risk of harm prong of *Daniels.* (*Rayford, supra,* 9 Cal.4th at p. 13.)

movement dramatically changed the environmental context. [¶] We note the present case provides a good illustration of the distinction between incidental and nonincidental movements. . . . [T]he . . . defendant had [initially] attacked the . . . victim on a grassy strip immediately adjacent to the sidewalk [perhaps near where he had first accosted her], in full view of a major urban street. The movement from the sidewalk to the grassy strip could easily be characterized as incidental, in that it effected no substantial change in the surroundings, and may have been a short distance from where the defendant first made contact with the victim. However, the forcible movement of the victim into the darkened park and behind a large building was properly found by the jury to have been more than incidental to the sexual assault." (*Diaz, supra,* 78 Cal.App.4th at pp. 248-249.) It is interesting to note that *Diaz* echoes the reliance of *Salazar* on the fact that the underlying crime could have been accomplished without the movement.

However, regardless of whether "incidental" and "necessary" may properly be equated, the question to be answered here is whether there was a sufficient basis upon which this jury could reasonably conclude that the movements of the victims were not incidental to the robberies. I believe there was. The victims were moved from the showroom of a jewelry store, openly accessible to customers, fronted by large windows, within view of the general public, to a five-foot by five-foot office in the rear that had a window into the showroom from which one could look out, but not in. The majority notes that the victims were moved 50 feet. Although the victims could not recall if Hoard closed the door to the office after first putting them in there, after he reentered it when the cell phone dropped, he slammed the door shut as he left to resume the taking of jewelry from the showroom counters. Before leaving the office, he destroyed the only phone he believed to be present. These facts constituted more than a sufficient basis upon which this jury could reasonably conclude that the scope and nature of the movement (*Rayford, supra,* 9 Cal.4th at p. 12) and the changed context of the victims' environment (*ibid.*) were such that the movement was not incidental to the robberies.

The majority also overturns the jury's implied finding of fact that the movement increased the risk of harm to the victims over and above that necessarily present in robbery. To reiterate, this prong of the asportation element includes consideration of such factors as the decreased likelihood of detection, the danger inherent in a victim's foreseeable attempt to escape, and the attacker's enhanced opportunity to commit additional crimes. (*Rayford, supra,* 9 Cal.4th at p. 13.)

We begin by noting that the majority concludes that the movement did not "*substantially*" increase the risk of harm." (Maj. opn., *ante,* at p. 607, italics

added.) However, as the majority earlier noted (maj. opn., *ante*, at p. 602), Penal Code section 209 does not require that the increase in risk be *substantial*, nor did the instructions given this jury.

In *Rayford*, the California Supreme Court held, "[The victim] was forcibly moved . . . at night from a parking lot of a closed store to the other side of a wall located at the edge of the lot. She was forced to sit against the wall and beside a small tree, 34 feet from the street. The wall blocked the view of any passersby from the parking lot side, and the tree and bushes at the end of the wall limited detection of [her] from the street. While the area beyond the wall bordered on a two-lane street, it was underdeveloped, and made up of dirt and rocks. Finally, . . . [t]here is no evidence as to whether [the defendant and the victim] were detectable from the street. [¶] The jury could reasonably have concluded that [the victim's] forcible movement . . . substantially increased her risk of harm." (*Rayford, supra*, 9 Cal.4th at p. 23.)

I note that an increased risk of harm is consistently upheld where the defendant is armed during the movement of the victim. (See, e.g., *People v. Lara* (1974) 12 Cal.3d 903, 908 [117 Cal.Rptr. 549, 528 P.2d 365]; *Earley, supra*, 14 Cal.3d at p. 131.)

I recognize, as does the majority (maj. opn., *ante*, at p. 607), that California Supreme Court cases that predated *Rayford* held that the removal of the victim from public view *in itself* does not *substantially* increase the risk of harm. (*People v. Stanworth* (1974) 11 Cal.3d 588 [114 Cal.Rptr. 250, 522 P.2d 1058]; *In re Crumpton* (1973) 9 Cal.3d 463, 467 [106 Cal.Rptr. 770, 507 P.2d 74].)[9] However, a *substantial* increase in the risk of harm is no longer required. Additionally, as is clear from my research, the law on the asportation element has evolved over the years. I also note that *Rayford*'s reliance solely upon the isolation of the victim caused by the movement was echoed in *Diaz, supra*, 78 Cal.App.4th at page 249, and *Salazar, supra*, 33 Cal.App.4th at page 348.

However, the isolation of the victims here was not the only factor upon which this jury could rely in finding that the movement increased their risk of harm. In *Jones, supra*, 75 Cal.App.4th at page 630, the court noted that "[a]n increased risk of harm was [also] manifested by [the defendant's] demonstrated willingness to be violent, having knocked [the victim] to the ground [and] gripped her mouth so tightly as to leave a burn mark on her

---

[9]However, in *Earley, supra*, 14 Cal.3d 122, the California Supreme Court noted, " '[A]cts of removing the victim from public view . . .' [citation] . . . *remain* a circumstance to be considered in determining whether the risk of harm was substantially increased." (*Id.* at p. 133, fn. 15, italics added.)

face, and grabb[ing] her [when she tried to escape after the kidnapping began]." Here, like in *Jones*, Hoard demonstrated a willingness to be violent. When he suspected that the victims were trying to use the phone to summon help, he became angry, pulled the phone off the wall and smashed it on the ground, then slammed shut the door to the office. Additionally, by immobilizing the victims by duct-taping their wrists and ankles, he increased the opportunity to commit additional crimes against them.

Finally, in *People v. Nguyen* (2000) 22 Cal.4th 872 [95 Cal.Rptr.2d 178, 997 P.2d 493], the California Supreme Court held that the increased risk of harm necessary for aggravated kidnapping could be psychological harm.[10] The jury here was so instructed. The victims testified that Hoard asked them if they had families and told them that if they wanted to see their loved ones again, they had better cooperate with him. He used obscenities when threatening to kill them. He threatened them again after he suspected they had tried to use the phone. Both were hysterical and either screaming or crying immediately after the crimes. Neither wanted to work at a jewelry store again. One of the victims testified at trial, "I thought the second this even started that . . . that was it. It was over. Just that fast, I thought. I had no idea what was gonna happen." Under the circumstances, the jury could reasonably conclude that the movement of the victims to the office also increased the risk of mental harm.

I concur in the majority's conclusion that the carjacking conviction should be affirmed, but I dissent from its reversal of the aggravated robbery convictions.

Respondent's petition for review by the Supreme Court was denied January 29, 2003.

---

[10]The majority cannot ignore the holding of *Nguyen* permitting the consideration of psychological harm on the basis that the facts in *Nguyen* are unlike those here. (Maj. opn., *ante*, at p. 607.)