Filed 5/29/14  P. v. Walker CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>RANDY T. WALKER,<br><br>　　　Defendant and Appellant. | B249270<br><br>(Los Angeles County<br>　Super. Ct. No. MA044770) |

　　　APPEAL from a judgment of the Superior Court of Los Angeles County, Charles A. Chung, Judge.  Reversed in part and Affirmed in part.

　　　Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Herbert S. Tetef, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted appellant Randy T. Walker of rape (count 1, Pen. Code, § 261, subd. (a)(2))[1] and kidnapping for the purpose of robbery (count 6, § 209, subd. (b)(1)). The jury found true the allegation in both counts that he used a handgun (§ 12022.53, subd. (b)), and in the rape count found true three "One Strike" allegations (§ 667.61, subds. (a), (d), and (e)) that he committed the offense during a first degree burglary, that he kidnapped the victim and substantially increased the risk of harm to her, and that he engaged in the tying or binding of the victim. Although the information alleged a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12, subs. (a)-(d)) and defendant waived his right to a jury trial on that allegation, no bench trial was held and the record fails to reflect that defendant admitted the allegation. Nonetheless, the trial court sentenced defendant as if he had suffered a prior strike to a term of 50 years to life: 25 years to life under the One Strike law on the rape count, doubled under the Three Strikes law. The court also imposed and stayed a term of 10 years for the handgun use allegation. The sentence on the remaining count was stayed under section 654.

Defendant appeals from the judgment. He contends that: (1) the evidence was insufficient to support his conviction of kidnapping for robbery, because the evidence failed to prove that the movement of the victim was more than incidental to the underlying robbery and increased the risk of harm to her beyond that present in the robbery; (2) the evidence was insufficient to support the One Strike allegation under section 667.61, subdivision (d)(2) in the rape count that he kidnapped the victim and substantially increased the risk of harm inherent in the underlying rape; and (3) the trial court erred in instructing on the section 667.61, subdivision (d)(2) allegation. We asked the parties to address two additional

---

[1] All further statutory references are to the Penal Code.

2

issues: (1) whether the trial court erred in staying the 10-year enhancement for handgun use under section 12022.53, subdivision (b) on the rape count, and (2) whether the case must be remanded for additional proceedings on appellant's alleged prior strike conviction.

As explained below, we find the evidence sufficient to support the kidnapping for robbery conviction and the section 667.61, subdivision (d)(2) allegation. Although the trial court erred in instructing on the allegation, we conclude that the error is harmless beyond a reasonable doubt. We further conclude that the trial court erred in staying the handgun use enhancement on the rape count, and that the case must be remanded for additional proceedings on the alleged strike conviction and for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

*Factual Background*

On October 14, 2003, Elizabeth G. left her home in Palmdale to take her older children to school. She left her two younger children at home with her then-husband Ezequiel, who was involved in drug dealing.

While Elizabeth was gone, two African-American men entered the house, confronted Ezequiel, and demanded money. According to Ezequiel,[2] they dragged him to the master bedroom, and gagged and bound him with belts. One of the men struck him on the head with his gun, and the other with a heated a knife on the stove in the kitchen. The men said that they were going to "shove [the knife] up his ass." Ezequiel told them that there was money under the bed. The men took the money, and also took jewelry from the bedroom dresser. Elizabeth returned

---

[2]    Ezequiel's statements were introduced though the testimony of Los Angeles County Sheriff's Deputy Randy Levinson, who interviewed him shortly after the crimes.

home, and one of the men – the larger of the two, later identified as appellant – ran to the front door.

As Elizabeth reached the front door, carrying gallons of milk in each hand, someone opened the door. She entered, but before she could put down the milk, appellant came from behind the door and grabbed her from behind by the neck. Elizabeth initially thought it was Ezequiel playing.

Appellant guided her by the back of the neck from the living room area through a hallway into the master bedroom, her hands still carrying the milk. When she reached the bedroom, she dropped the milk and realized that the man guiding her by the neck was not Ezequiel, who was lying face down on the bedroom floor, hands and feet bound. Also, Elizabeth's son, who was asleep in the room, woke up and hid under the bed. Elizabeth's baby was on a chair in the room.

Appellant threw Elizabeth on the floor, tied her hands together with a belt, and removed her clothes. The other man – the skinnier of the two – put a sock in her mouth and tied it with a belt to gag her. The men kept asking Ezequiel where he had more money. According to Ezequiel, the men said that they would rape Elizabeth if he would not give them more money.

Appellant then raped Elizabeth using a condom. Ezequiel told her in Spanish not to get desperate, they would have a chance to do something.

The men left the house. Elizabeth and Ezequiel were able to free themselves. However, the men returned to the bedroom. Appellant was holding a gun. Ezequiel struggled with the men while Elizabeth ran out of the house and into the street screaming for help. The men left the house and drove away. Ezequiel, who had obtained his own gun, shot at them. A neighbor saw Elizabeth and called 911.

4

DNA evidence from a condom found at the scene matched appellant. Elizabeth identified appellant in a six-pack photographic lineup and at trial as the man who raped her.

**DISCUSSION**

I.      *Kidnapping for Robbery*

Appellant contends that there is insufficient evidence of asportation to sustain his conviction for kidnapping for robbery.  He is incorrect.

"'In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence – that is, evidence that is reasonable, credible, and of solid value – such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]"  (*People v. James* (2007) 148 Cal.App.4th 446, 452 (*James*).)  "'In evaluating the sufficiency of evidence, "the relevant question on appeal is not whether *we* are convinced beyond a reasonable doubt" [citation], but "whether '"*any* rational trier of fact"' could have been so persuaded." . . .'  [Citation.]"  (*People v. Hovarter* (2008) 44 Cal.4th 983, 997.)

Appellant was convicted of kidnapping to commit robbery pursuant to section 209, subdivision (b)(1).  Simple kidnapping is defined as follows:  "Every person who forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county, is guilty of kidnapping."  (§ 207, subd. (a).)  Kidnapping for robbery "'shall only apply if the movement of the victim is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in,

5

the intended' robbery. [Citations.]" (*People v. Leavel* (2012) 203 Cal.App.4th 823, 833 (*Leavel*); § 209, subd. (b).).)[3]

"'With regard to the first prong, the jury considers the "scope and nature" of the movement, which includes the actual distance a victim is moved. [Citations.] There is, however, no minimum distance a defendant must move a victim to satisfy the first prong.' [Citation.] We also consider the 'context of the environment in which the movement occurred.' [Citation.] 'This standard suggests a multifaceted, qualitative evaluation rather than a simple quantitative assessment.' [Citation.]

"The second prong "'includes consideration of such factors as the decreased likelihood of detection, the danger inherent in a victim's foreseeable attempts to escape, and the attacker's enhanced opportunity to commit additional crimes. [Citations.] The fact that these dangers do not in fact materialize does not, of course, mean that the risk of harm was not increased.''" [Citation.]" (*Leavel*, *supra*, 203 Cal.App.4th at pp. 833-834.)

"A conviction of kidnapping for robbery requires an increase in the harm to the victim beyond that contained in a hypothetical standstill robbery, where the risk of harm 'arises from the perpetrator's use of force or fear, and from brief movements incidental to the robbery.' [Citation.] 'The essence of aggravated kidnapping is the increase in the risk of harm to the victim caused by the *forced movement*.' [Citation.]" (*James*, *supra*, 148 Cal.App.4th at p. 455.) "[I]t has often been held that defendants who have moved their victims within the premises in

---

[3] Prior to 1997, aggravated kidnapping required that the movement of the victim "substantially" increase the risk of harm to the victim. (*People v. Vines* (2011) 51 Cal.4th 830, 869, fn. 20.) The Legislature modified the asportation standard in 1997 by eliminating the "substantial" requirement. (*Ibid.*) This modification is of no import here, because we find that the higher standard of substantial increase in the risk of harm is established.

6

which they were found did not increase the risk to the victims [citations], while defendants who moved their victims to more secluded or enclosed areas did substantially increase the risk [citations]." (*Id*. p. 456.)

Here, appellant contends that the evidence is insufficient to support a finding of asportation because Elizabeth was moved only from the living room to the bedroom. True, the evidence showed that appellant moved Elizabeth within the premises from the front door area where she entered the house into the master bedroom – a relatively short distance. Nonetheless, the evidence overwhelmingly proved that this movement was not merely incidental to the robbery and substantially increased the risk of harm. The movement of Elizabeth to the master bedroom was unnecessary to the robbery. Appellant could have demanded that she or Ezequiel or both reveal the location of additional money or jewelry immediately upon grabbing her as she entered the house. (See *Leavel, supra,* 203 Cal.App.4th at p. 828 [movement that is unnecessary to commit robbery is not incidental.].) Also, the movement substantially increased the risk of harm in that it moved her to a more secluded part of the house where the second perpetrator was present, where Ezequiel already was bound and on the floor, and where she was bound and gagged, making it more difficult for her to escape and placing her at risk of additional crimes. Indeed, it was in that location where the intruders earlier had threatened to insert a hot knife into Ezequiel's rectum, and it was in that room where appellant raped Elizabeth, resulting in his rape conviction in count 1. Moreover additional potential victims – Elizabeth's children – were present in the bedroom, as was Ezequiel. The children's presence greatly increased the risk that Elizabeth and Ezequiel might resist or attempt to escape in order to save each other and the children, resulting in greatly increased danger to Elizabeth from the intruders' possible violent response. This evidence amply supports the conclusion

7

that the movement of Elizabeth was not incidental to the robbery, and greatly increased the risk of harm to her.

Appellant relies on *People v. Hoard* (2002) 103 Cal.App.4th 599 (*Hoard*), in which the defendant entered a jewelry store, displayed a gun, and moved two women employees into an office at the back, where he bound them with duct tape. On appeal, the court held that the movement of the two women did not substantially increase the risk of harm to them. (*Id.* at p. 607.) The court reasoned that the movement of the women to the back of the store merely gave the defendant "free access to the jewelry and allowed him to conceal the robbery from any entering customers who might have thwarted him." (*Ibid.*) The court thus concluded that the movement "served only to facilitate the crime with no other apparent purpose." (*Ibid.*)

The facts of *Hoard* are manifestly dissimilar from the instant case. The movement of Elizabeth was not done merely to facilitate the robbery. As we have explained, Elizabeth and appellant were already concealed from view inside the house, and appellant could have demanded that she and Ezequiel reveal the location of more money immediately upon grabbing her by the neck. Rather, the movement to the master bedroom greatly increased the risk of harm to Elizabeth – the other perpetrator was there; the intruders already had threatened to maim Ezequiel there with a hot knife; Elizabeth was bound and gagged there and appellant then raped her; the two young children and Ezequiel were there. Obviously, the risk of harm to Elizabeth by the movement to the master bedroom increased exponentially beyond that inherent in the robbery itself.

Appellant argues that because Elizabeth initially thought it was Ezequiel moving her, she consented to the movement and therefore no kidnapping occurred. He relies on the principle that "'[a]sportation by fraud alone does not constitute

8

general kidnapping,'" because movement by force or fear is required. (*People v. Majors* (2004) 33 Cal.4th 321, 327 (*Majors*).) However, there was no evidence that Elizabeth's movement was accomplished through fraud alone (or that there was any fraud at all) and, more fundamentally, no evidence that Elizabeth consented to be moved. Although Elizabeth testified that she thought it was Ezequiel who was guiding her until she saw Ezequiel bound and gagged in the master bedroom, she did not testify that she consented to the movement from the living room to the master bedroom. To the contrary, her testimony showed that despite her belief, her movement was accomplished by force. When she entered the house, she was carrying gallons of milk in each hand. Before she could put them down, she was grabbed from behind by the neck. She was then guided, still held by the neck, to the master bedroom, where she was thrown to the floor, bound, and gagged. That before she reached the bedroom Elizabeth erroneously thought it was Ezequiel rather than appellant who used this force does not mean that the force cannot support appellant's kidnapping for robbery conviction. "Of course, it goes without saying that asportation may be accomplished by means that are both fraudulent and involve force or fear." (*Majors, supra,* 33 Cal.4th at p. 328.) In other words, regardless of Elizabeth's initial belief that Ezequiel was moving her, that movement was accomplished by appellant's use of force, and as a result he committed a kidnapping.

We conclude that the evidence was sufficient to support the conviction of kidnapping for robbery.


II.     *Section 667.61, Subdivision (d)(2) Allegation*

In the rape count, the jury found true three One Strike allegations under section 667.61. On appeal, appellant challenges the sufficiency of the evidence of

9

only one: the allegation under section 667.61, subdivision (d)(2), that he kidnapped the victim and substantially increased the risk harm inherent in the underlying rape. This "circumstance [under section 667.61, subdivision (d)(2)] requires movement of the victim which substantially increases the risk of harm over and above that necessarily present *in the underlying sexual offense*. (§ 667.61, subd. (d)(2).)" (*People v. Jones* (1997) 58 Cal.App.4th 693, 713, italics added.)

For the same reasons that the evidence was sufficient to support the kidnapping for robbery conviction, it was sufficient to prove that the movement of Elizabeth substantially increased the risk of harm beyond that inherent in the rape. There was no need to move Elizabeth to the master bedroom to accomplish the rape. She and appellant already were concealed from view inside the house. The movement to the master bedroom placed her in a more secluded part of the house where she was bound and gagged. The second perpetrator was present there, as were Ezequiel and her two young children. For the same reasons these circumstances greatly increased the risk of harm to Elizabeth beyond that inherent in the robbery, so too they greatly increased the risk of harm to her beyond that inherent in the rape. Indeed, the evidence of the substantial increase in harm was overwhelming.

III.   *Jury Instruction on One Strike Allegation*

The One Strike allegation under section 667.61, subdivision (d)(2), required a finding that the movement of Elizabeth substantially increased the risk of harm inherent in the rape. Appellant correctly argues that the trial court failed to instruct on this element.

10

The court instructed the jury as follows: "If you find the defendant guilty of the crime charged in Count 1 [rape], you must then decide whether the People have proved the additional allegation that the defendant kidnapped the victim, increasing the risk of harm to her and return a separate finding. [¶] To decide whether the defendant kidnapped the victim, increasing the risk of harm to her, *please refer to the separate instructions that I have given you on kidnapping. You must apply those instructions when you decide whether the People have proved this additional allegation.* [¶] The People have the burden of proving each allegation beyond a reasonable doubt. If the People have not met this burden, you must find that the allegation has not been proved." (Italics added.)

The separate instructions on kidnapping informed the jury, in relevant part, that it must determine whether the movement of the victim substantially increased the risk of harm above that present in the crime of *robbery*. The instructions did not mention rape. Thus, the jury was never instructed to determine whether the movement substantially increased the risk of harm beyond that inherent in rape.

Respondent concedes that the court erred, but argues that the error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24.) We agree. In convicting appellant of kidnapping for robbery, the jury necessarily concluded that, under the instructions, the movement of Elizabeth substantially increased the risk of harm to her present in the crime of robbery. On this record, we see no rational reason that the jury could conclude that the movement substantially increased the risk of harm present in the robbery, but that it did not substantially increase the risk of harm present in the rape. As we have already explained, the same evidence overwhelmingly supports such a finding with respect to both the robbery and the rape. Thus, beyond a reasonable doubt, the

11

court's error in instructing on the One Strike allegation under section 667.61, subdivision (d)(2), did not affect the verdict on that allegation.

IV.   *The Prior Strike Conviction*

The record fails to contain a true finding on appellant's alleged prior strike conviction. Although appellant waived his right to a jury on that allegation, he did not admit the allegation, and the court never found it to be true. Therefore, the case must be remanded for additional proceedings on the allegation. Appellant asserts that on remand he is entitled, if he chooses, to reassert his right to a jury trial. We agree. There is no bar to appellant deciding on remand to invoke his right to a jury trial on the prior strike conviction.

V.   *Use Enhancement*

In sentencing appellant on the rape count, the trial court stayed the 10-year enhancement for the finding of handgun use under section 12022.53, subdivision (b). That enhancement cannot be stayed. (*People v. Gonzalez* (2008) 43 Cal.4th 1118, 1126-1127.) Therefore, when resentencing on remand, the court is directed to impose the 10-year enhancement on the rape count and not stay it.

## DISPOSITION

The case is reversed insofar as it purports to contain a true finding on appellant's alleged prior strike conviction. The case is remanded for additional proceedings on that allegation and for resentencing. In resentencing, the court is directed to impose and not stay the 10-year enhancement under section 12022.53, subdivision (b), on the rape count (count 1). In all other respects, the judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.


We concur:



EPSTEIN, P. J.



MANELLA, J.

13