Filed 2/27/13  P. v. Solano-Rosario CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>ODALIS SOLANO-ROSARIO,<br><br>     Defendant and Appellant. | A134242<br><br>(Sonoma County<br>Super. Ct. No. SCR572570) |

**I.**

**INTRODUCTION**

After a jury trial, appellant was convicted of numerous offenses stemming from his violent sexual attack on a woman, Jane Doe.[1]  Specifically, appellant was found guilty of Count I, alleging forcible sexual penetration (Pen. Code, § 289, subd. (a)(1)).[2]  In connection with this conviction, the jury found true the aggravated kidnapping enhancement (§ 667.61, subds. (a), (d), (e)).  Appellant was also found guilty of Count II, alleging kidnapping with the intent to commit forcible sexual penetration (§ 209, subd. (b)(1)), and Count III, alleging assault with the intent to commit forcible sexual penetration (§ 220, subd. (a)).

On appeal, appellant claims "the evidence was insufficient to convict of any form of kidnapping."  He also argues that the jury was prejudicially misled by the instructions

_____

[1]  As was done at trial, we refer to the victim throughout this opinion as Jane Doe to protect her privacy.

[2]  All statutory references are to the Penal Code.

1

given on the risk of harm to the victim, and the instructions given on the use of circumstantial evidence in proving the charged offenses. Finally, he claims the court erred when it denied all conduct credit for his presentence confinement.

We affirm the judgment. However, as respondent concedes, appellant's challenge to the trial court's decision not to award any conduct credits has merit. Consequently, we amend the abstract of judgment to show 115 additional days of presentence conduct credit.

## II.

## FACTS AND PROCEDURAL HISTORY

On November 16, 2009, just after 2:00 p.m., Jane Doe, who was nine months pregnant, arrived at the long driveway she shared with several neighbors, leading to her family's rural property in Sebastopol, California. She was driving the family's Volkswagen van and pulled into the driveway with her two little boys in the back, who were ages 3 and 6. As she drove toward her house located at the end of the driveway, she noticed a man she did not know standing in front of a residence. That man was later identified as appellant.

Jane Doe testified that she waved at appellant in a "friendly" fashion as she drove by. When she made it to her property, she parked the van in front of her house, got out, and began attending to her children. Jane Doe noticed that appellant was walking toward her on the driveway.

Appellant approached Jane Doe, saying he was her neighbor. As they spoke Jane Doe was feeling increasingly uncomfortable; and she walked a short distance from her van, to put some distance between appellant and her children. Appellant then asked Jane Doe if she could give him some "love." Jane Doe responded, "No, I don't give out love in that way . . . ." Appellant then grabbed Jane Doe's hand and tried to kiss it. Jane Doe immediately pulled her hand away. She told appellant to leave her property and that she would call the police if he did not.

As Jane Doe started to walk back to her van to get her cell phone, appellant put his arms around her in a "bear hug." Jane Doe's hands were down at her side when he threw

2

his arms around her, grabbed her from the front, and started pushing her backward. Appellant moved Jane Doe with a backward shoving motion anywhere from 20 to 35 feet. He shoved her toward the fence line, shrouded with hedges and grass. Jane Doe described the location to which appellant shoved her as being "in the bushes" and away from the common driveway that she shared with her neighbors.

As soon as appellant got her in that location, she fell to the ground. Appellant straddled her and immediately started pulling her pants down. Jane Doe was wearing "stretchy yoga pants" that were "very comfortable for a "[nine-]month pregnant woman." As appellant did this, Jane Doe was screaming at the top of her lungs and thrashing about, trying to keep her pants up while appellant was trying to pull them down. Appellant began touching Jane Doe's bare vagina, inserting his fingers.

Neighbors from surrounding properties heard Jane Doe's screams. James and Sean Cook, who were across the field, ran over when they heard her scream for help. When they got to Jane Doe, they saw appellant on top of her with her pants pulled down. As they got closer, appellant told them something to the effect of "mind your own business." Sean Cook took out his cell phone and dialed 911.

Another person in the area, John Scoma, arrived on the scene, jumped over the fence, and started to confront appellant. At that point, appellant took off running down the shared driveway toward Highway 116. Mr. Scoma gave chase and confronted appellant on the driveway. Appellant responded by pulling out a knife and brandishing it.[3] Upon seeing the knife, Mr. Scoma felt threatened and stopped his pursuit. Appellant successfully fled the scene. Deputies from the Sonoma County Sheriff's Department arrived. Shortly thereafter, Jane Doe was transported by ambulance to the hospital for examination and treatment.

---

[3] Appellant was charged in Count IV with assault upon John Scoma with a deadly weapon. (§ 245, subd. (a)(1).) On October 31, 2011, at the close of the prosecution's case, the court granted a motion of acquittal as to Count IV under section 1118.1.

Jane Doe was not substantially injured, but had some soreness and scratches. The jury was informed that her pregnancy had proceeded to full term, and in December 2009 (i.e., one month after the crime) she gave birth to a healthy child.

On the day after the sexual assault, November 17, 2009, appellant's mother gave consent to law enforcement to enter her home to search for appellant. With the help of a trained canine, appellant was pulled out from underneath the house where he was hiding in a crawlspace.

As appellant acknowledges on appeal, he never denied attacking Jane Doe with the intent to sexually assault her. Appellant defines the "true issue" at trial as whether "the People had proved the essential elements of both aggravated kidnapping and the 'One Strike' enhancement." That is: "Did the movement of the victim substantially increase the risk of harm to her over and above that inherent in the intended crime?"

After deliberating for less than an hour, the jury returned its verdict finding appellant guilty of Counts I, II, and III and finding the alleged enhancements to be true. On December 29, 2011, the court sentenced appellant to a term of 25 years to life for forcible penetration, with the circumstance alleged under section 667.61. The sentences imposed on Counts II and III were stayed pursuant to section 654. Credit for time already served was granted, and other sentencing fines, penalties, restitution, and conditions were imposed. This appeal followed.

### III.

### DISCUSSION

**A. Substantial Evidence Demonstrates Appellant Kidnapped Jane Doe and Substantially Increased the Risk of Harm to Her**

On appeal, appellant claims "the evidence was insufficient to convict him of both the 'One Strike' enhancement and of aggravated kidnapping." Pursuant to California's

4

One Strike law,[4] a finding under section 667.61, subdivision (a), requires imposition of a sentence of 25 years to life when a defendant is convicted of committing one of the enumerated sexual offenses, including forcible sexual penetration, under one or more of the circumstances specified in subdivision (d). One of the specified circumstances, as found true by the jury in this case in Count I, is that the defendant "kidnapped the victim of the present offense and the movement of the victim substantially increased the risk of harm to the victim over and above the level of risk necessarily inherent in the underlying offense . . . ." (§ 667.61, subd. (d)(2).)

Also, as alleged in Count II, the jury found appellant guilty of violating section 209, subdivision (b), a related statute, which defines aggravated kidnapping (kidnapping for purposes of committing robbery, rape, and other specified offenses). It punishes offenders with life in prison with the possibility of parole "only" if "the movement of the victim is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in, the intended underlying offense." (§ 209, subd. (b)(1), (2).)

Appellant contends the evidence is insufficient to support the jury's verdict finding the One Strike enhancement true based on kidnapping as alleged in Count I and finding appellant guilty of the aggravated kidnapping as alleged in Count II. He claims his movement of Jane Doe from the driveway into the grassy area near the fence was merely incidental to the underlying sexual offense and did not substantially increase the risk of harm to her. We first point out that there are minor differences in the standards governing the asportation element of each of these charged offenses.

Section 667.61, subdivision (d)(2), the One Strike enhancement, requires proof that "[t]he defendant kidnapped the victim of the present offense and the movement of the victim *substantially increased* the risk of harm to the victim over and above that level

---

[4] Section 667.61, often called the "One Strike" law, was enacted to ensure that serious sexual offenders receive long prison sentences regardless of whether they have any prior criminal convictions. (*People v. Wutzke* (2002) 28 Cal.4th 923, 929-930; *People v. Alvarado* (2001) 87 Cal.App.4th 178, 186.)

of risk necessarily inherent in the underlying offense . . . ." (Italics added.) However, as numerous courts have pointed out, section 209, subdivision (b)(2), which defines aggravated kidnapping, does not require the prosecution to prove that the movement *substantially* increased the risk of harm to the victim. (See *People v. Robertson* (2012) 208 Cal.App.4th 965, 979-982, and numerous cases cited therein.) Section 209, subdivision (b)(2), simply requires proof that a defendant's movement of the victim *increased* the risk of harm to the victim over and above that which is inherent in the underlying offense itself.

Even though these statutes impose slightly different standards, the instructions given in this case with respect to the asportation requirement only contained the stricter evidentiary requirement that the movement *substantially* increase the risk of harm to the victim. This instruction, which was more demanding of the prosecution, actually worked to appellant's advantage because it made it harder for the jury to convict appellant of aggravated kidnapping under section 209, subdivision (b)(2), than if the jury had been given a legally correct instruction. In accordance with the instruction given the jury, we apply the more stringent evidentiary standard in our review of the evidence—that is, we examine the record to determine whether there is substantial evidence appellant's movement of Jane Doe *substantially increased* the risk of harm to her. If the evidence is sufficient to support the jury's verdict under that standard, by necessity, it also supports the jury's verdict finding appellant guilty of aggravated kidnapping under section 209, subdivision (b)(2).

Our analysis of the evidence of asportation is guided by the familiar standard of review: " 'On appeal, an appellate court deciding whether sufficient evidence supports a verdict must determine whether the record contains substantial evidence—which we repeatedly have described as evidence that is reasonable, credible, and of solid value— from which a jury could find the accused guilty beyond a reasonable doubt.' [Citations.] We presume in support of the judgment 'the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.]" (*People v. Vines* (2011) 51 Cal.4th 830, 869.)

6

Whether a defendant's movement of a victim is merely incidental to the underlying offense is determined by the scope and nature of the movement, including the actual distance the victim is moved (although no minimum distance is required) and the environment in which the movement occurred. (*People v. Rayford* (1994) 9 Cal.4th 1, 12 (*Rayford*); see *People v. Dominguez* (2006) 39 Cal.4th 1141, 1151-1152 (*Dominguez*).) "[I]ncidental movements are brief and insubstantial, and frequently consist of movement around the premises where the incident began. [Citations.]" (*People v. Diaz* (2000) 78 Cal.App.4th 243, 247.) By contrast, "[w]here movement changes the victim's environment, it does not have to be great in distance to be substantial. [Citation.]" (*People v. Shadden* (2001) 93 Cal.App.4th 164, 169 (*Shadden*) [dragging a store clerk nine feet from the front counter of a store to a small back room for the purpose of raping her was sufficient to support aggravated kidnapping conviction].) Whether the movement caused a substantial increase in the risk of harm to the victim is dependent on "the decreased likelihood of detection, the danger inherent in a victim's foreseeable attempts to escape, and the attacker's enhanced opportunity to commit additional crimes. [Citations.]" (*Rayford*, at p. 13; accord, *Dominguez*, at p. 1152.)

Appellant urges that the movement in the present case was brief and insubstantial, from one isolated location to another similar location a short distance away, and did not increase the risk to Jane Doe over that inherent in the perpetration of the sexual offense. He compares this case to *People v. Stanworth* (1974) 11 Cal.3d 588 (*Stanworth*), overruled on other grounds in *People v. Martinez* (1999) 20 Cal.4th 225, 237.

In *Stanworth*, while the victim was walking along a road on the way home from a shopping center in the early evening, the defendant grabbed her from behind, held an ice pick at her throat, dragged her into an open field about 25 feet from the road, bound her hands, raped her, and took money from her purse. (*Stanworth*, 11 Cal.3d at p. 597.) The court found that the movement of the victim was not substantial but "merely incidental" to the commission of the rape and robbery, and that there was no evidence the "relatively brief movement . . . removed her from public view or in any other manner substantially

7

increased the risk, beyond that inherent in the underlying crimes, that she would suffer physical harm." (*Id.* at p. 598.)

In *Dominguez, supra,* 39 Cal.4th 1141, the court examined similar facts but found sufficient evidence the forced movement in that case increased the victim's risk of harm. The evidence showed that, in the middle of the night, the defendant forced the victim to move from the shoulder of a road, down a 10 to 12-foot embankment and partially into a walnut orchard, about 25 feet away from the road. (*Id*. at pp. 1150-1151.) Because of the steepness of the embankment and trees in the orchard, it was unlikely a driver on the road would see the victim in the area to which she was moved. (*Id.* at p. 1153.) Thus, although she was not moved a great distance, the court concluded that the movement "changed the victim's environment from a relatively open area alongside the road to a place significantly more secluded, substantially decreasing the possibility of detection, escape or rescue." (*Ibid.*) Distinguishing *Stanworth*, the *Dominguez* court concluded that the movement "removed [the victim] from public view and substantially increased her risk of harm." (*Dominguez*, at p. 1154.)

We believe the present case is more like *Dominguez* than *Stanworth.* Viewing the evidence in the light most favorable to the jury's verdict, as we must under our standard of review, the record contains substantial evidence from which a reasonable jury could conclude beyond a reasonable doubt that the movement was more than incidental to the commission of the sexual assault and substantially increased the risk of harm to Jane Doe above that inherent in the underlying crime.

After approaching Jane Doe when she was standing near her van attending to her children, appellant surprised her by stepping in front of her, grabbing her in a bear hug, and forcing her backward into a bushy area on the fence line beside the driveway. Jane Doe's testimony was very clear that appellant intentionally moved her off the driveway and into the bushes against her will. She testified "I didn't really have any sort of say where I was going." (*Shadden*, *supra*, 93 Cal.App.4th at p. 169 ["Where a defendant drags a victim to another place, and then attempts a rape, the jury may reasonably infer that the movement was neither part of nor necessary to the rape"].) She struggled to try

to keep her feet under her, but she ended up falling backward on the ground. The grassy area where appellant pushed her was variously estimated to be about 20 to 35 feet from where appellant first grabbed her. It was off the driveway and out of sight from where her neighbors could see her from their residences. Jane Doe was therefore less likely to be seen in the area to which appellant moved her than on the driveway where he first confronted her. Appellant also increased the odds that he could foil any attempt by Jane Doe to escape because he expanded the distance between Jane Doe and all methods of escape (her van and home) and any way to get help (her children and cell phone).

Consequently, when appellant pushed Jane Doe away from her driveway, her van, and her children, into a more concealed area, her environment dramatically changed by reducing her ability to escape, decreasing the likelihood of detection, and elevating the risk of serious injury or death. (*People v. Hoard* (2002) 103 Cal.App.4th 599, 607 ["[A] rape victim is certainly more at risk when concealed from public view and therefore more vulnerable to attack"].) We find ample evidence supporting the jury's conviction of aggravated kidnapping under section 209, subdivision (b)(2) and the true finding under section 667.61, subdivision (d)(2).[5]

### B. Increase in Risk of Psychological Harm to Find One Strike Enhancement True under section 667.61, subdivision (d)(2)

Appellant next claims the jury was inappropriately invited to use the potential increase in risk of *mental* harm to Jane Doe as a reason to find true the Count I enhancement under section 667.61, subdivision (d)(2). As noted previously, section 667.61, subdivision (d)(2), the One Strike allegation, requires proof "[t]he defendant kidnapped the victim of the present offense and the movement of the victim substantially

---

[5] Because we find the evidence fully supports appellant's conviction for aggravated kidnapping, it necessarily follows that the lesser included offense of simple kidnapping was also supported by the evidence. (See *People v. Lewis* (2008) 43 Cal.4th 415, 518 [simple kidnapping is a necessarily included offense of aggravated kidnapping].) Therefore, we decline to discuss appellant's alternative argument, that the lesser included offense of simple kidnapping in violation of section 207, subdivision (a), was also not proven at trial.

*increased the risk of harm* to the victim over and above that level of risk necessarily inherent in the underlying offense . . . ." (Italics added.) Appellant complains the jury was improperly instructed in such a manner that they could find that a substantial increase in risk of harm was proven for purposes of the One Strike allegation simply based on an increase in *mental harm* in the form of Jane Doe's fear.

A defendant's challenge to the propriety of the trial court's jury instructions normally raises an issue of law that we review de novo. (*People v. Posey* (2004) 32 Cal.4th 193, 218 (*Posey*) ["The independent or de novo standard of review is applicable in assessing whether instructions correctly state the law"].)

As the parties concede, no California decision has ever actually considered whether mental or emotional harm is sufficient to support the increased "risk of harm" element of the section 667.61 allegation. However, under analogous legal circumstances, in *People v. Nguyen* (2000) 22 Cal.4th 872 (*Nguyen*), our Supreme Court held that the Legislature intended the increased risk of harm necessary for the asportation element of aggravated kidnapping (§ 209, subd. (b)) not be limited to increased risk of physical harm, but may be satisfied if there was a "substantially increased risk of either physical *or* mental harm." (*Id.* at pp. 885-886.) Therefore, for purposes of section 209, subdivision (b), the *Nguyen* court held that the word "harm" includes "psychological trauma to the victim." (*Id.* at p. 886.)

Although section 667.61 is similarly worded, appellant claims that the legislative intent underlying the One Strike allegation supports the conclusion that only a substantial increase in risk of physical harm, not mental harm, may be considered when proving the increased risk of harm element. According to appellant, since the instructions as given failed to focus adequately on the differences between the risk of harm as specified in section 209, subdivision (b)(2) and the risk of harm as specified in section 667.61, subdivision (d)(2), the instructions could have improperly allowed the jury to believe that mental harm alone was sufficient to prove there was a substantial increase in the risk of harm for purposes of finding the section 667.61, subdivision (d)(2) enhancement true.

10

"When considering a challenge to a jury instruction, we do not view the instruction in artificial isolation but rather in the context of the overall charge. [Citation.] For ambiguous instructions, the test is whether there is a reasonable likelihood that the jury misunderstood and misapplied the instruction. [Citation.]" (*People v. Mayfield* (1997) 14 Cal.4th 668, 777 (*Mayfield*); see *Posey*, *supra*, 32 Cal.4th at p. 218 [it is a legal issue if jury instructions are correct statements of law].)

When judged by these standards, even assuming appellant is correct and that the jury should not be allowed to use the increased risk of psychological harm to convict appellant of the One Strike allegation, we find no indication that the instructions given the jury were incorrect or misleading. With respect to aggravated kidnapping in violation of section 209, subdivision (b), the instruction identified the factors that the jury must consider in determining whether the movement substantially increased the risk of harm. In conformance with the Supreme Court's decision in *Nguyen*, *supra*, 22 Cal.4th at page 885, this instruction stated, "The defendant is charged in Count II with kidnapping for the purpose of sexual penetration in violation of [section 209, subdivision (b)]. . . . *As used here*, substantial distance means more than a slight or trivial distance. The movement must have . . . substantially increased the risk of physical *or psychological harm* to the person beyond that necessarily present in the forcible sexual penetration." (Italics added.)

With respect to section 667.61, the One Strike enhancement, the trial court used the standard jury instruction set out in CALCRIM No. 1203, which refers to a "risk of harm" without specifying whether that harm may be either mental or physical: "If you find the defendant guilty of the crime charged in Count I, you must then decide whether the People have proved the additional allegation that the defendant kidnapped Jane Doe, increasing the risk of harm to her. . . ." The instruction goes on to state, "In deciding whether . . . the movement substantially increased the risk of harm, you must consider all the circumstances relating to the movement."

11

Appellant claims the jury was "misled" as a result of the court's instructions on the One Strike allegation, because when combined with the prosecutor's argument,[6] the jury was left with the impression that it could find the One Strike allegation had been proven by moving someone against his or her will for a substantial distance where that movement substantially increases the risk of mental, not physical, harm to that person. However, in making this argument, appellant concedes, as he must, that "the jury was not specifically told it could consider psychological harm with respect to the enhancement . . . ." Indeed, the only mention of "psychological harm" appears in the instructions describing the elements of aggravated kidnapping in violation of section 209, subdivision (b); and the instruction contains the limiting phrase, "[*a*]*s used here*." (Italics added.) We therefore disagree with appellant that the instructions given here were erroneous. These instructions accurately and adequately defined the legal principles at issue. Accordingly, we find no instructional error. (*People v. Breverman* (1998) 19 Cal.4th 142, 154 (*Breverman*) [the trial court must instruct the jury on the general principles of law relevant to the issues raised by the evidence].)

Furthermore, we reject appellant's argument that the court had a sua sponte duty to give an instruction that only an increased risk of *physical* harm fulfills the increased risk of harm element for the One Strike allegation. While the trial court has a duty to give legally correct instructions, "the trial court is under no obligation to amplify or explain in the absence of a request that it do so. [Citations.]" (*Mayfield*, *supra*, 14 Cal.4th at p. 778.) If a jury is instructed on basic principles of law applicable to the charges, but a clarifying instruction is desired, the burden is on the defendant to request one. (*People v. Garvin* (2003) 110 Cal.App.4th 484, 488-489.)

---

[6] With respect to the prosecutor's closing argument, when talking generally about kidnapping, the prosecutor said "the harm can be psychological or physical." Appellant has not asserted prosecutorial misconduct as to these comments, but even if he had, such a claim would fail. The prosecutor's remark was neither legally incorrect or, when considered in context with the instructions given the jury, misleading.

Consequently, if appellant wanted a customized jury instruction informing the jury that the increased risk of harm under the One Strike law could only be based on an increased risk of physical harm, it was his burden to request such a pinpoint, clarifying, or amplifying instruction. (*People v. Lang* (1989) 49 Cal.3d 991, 1024; see *People v. Fiu* (2008) 165 Cal.App.4th 360, 370 [" 'A party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language'. . . "].) Appellant never requested a clarifying instruction on this point. Therefore, the court did not err by failing to further define the term "increased risk of harm" as included in its instructions on the section 667.61 allegation.

### C. Instructions Given on Circumstantial Evidence

CALCRIM Nos. 224 and 225 instruct on the proper use of circumstantial evidence. CALCRIM No. 225 focuses on circumstantial evidence to prove intent, while CALCRIM No. 224 is more inclusive, instructing the jury how to evaluate circumstantial evidence with regard to intent, as well as the other elements of the crime. (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1171-1172 (*Samaniego*).) Appellant requested the court instruct the jury with CALCRIM No. 224. After reviewing both CALCRIM No. 224 and CALCRIM No. 225, the trial court denied appellant's request and instructed the jury with CALCRIM No. 225—which is limited to a discussion of circumstantial evidence as it is used to prove intent or mental state. The issue on appeal is whether the trial court erred by denying appellant's request for CALCRIM No. 224 and instead instructing the jury with CALCRIM No. 225.

As we have seen, the trial court must instruct the jury on the general principles of law relevant to the issues raised by the evidence. (*Breverman*, *supra*, 19 Cal.4th at p. 154.) This includes the duty to instruct on how to evaluate circumstantial evidence if the prosecution relies substantially on circumstantial evidence to prove any element of the case. (*People v. Yrigoyen* (1955) 45 Cal.2d 46, 49 ["the court on its own motion should have given an instruction embodying the principle that to justify a conviction on

13

circumstantial evidence the facts and circumstances must not only be entirely consistent with the theory of guilt but must be inconsistent with any other rational conclusion"].)

"CALCRIM Nos. 224 and 225 provide essentially the same information on how the jury should consider circumstantial evidence, but CALCRIM No. 224 is more inclusive. [Citation.]" (*Samaniego*, *supra*, 172 Cal.App.4th at p. 1172.) CALCRIM No. 224 "is the proper instruction to give unless the only element of the offense that rests substantially or entirely on circumstantial evidence is that of specific intent or mental state. [Citations.]" (*People v. Cole* (2004) 33 Cal.4th 1158, 1222; accord Bench Notes to CALCRIM No. 225 (2012) pp. 59-60 ["Give this instruction when the defendant's intent or mental state is the only element of the offense that rests substantially or entirely on circumstantial evidence. If other elements of the offense also rest substantially or entirely on circumstantial evidence, do not give this instruction. Give CALCRIM No. 224, *Circumstantial Evidence: Sufficiency of Evidence*"].)

Appellant claims that because his intent or mental state was not the only element of the charged offenses that rested substantially or entirely on circumstantial evidence, the use of CALCRIM No. 225 was improper, and the jury should have been instructed on how to consider circumstantial evidence in accordance with CALCRIM No. 224. Appellant argues that circumstantial evidence was pivotal to the jury's consideration of the question: "Did the movement of the victim substantially increase the risk of harm to her over and above that inherent in the intended crime?"

However, contrary to appellant's contention on appeal, the events surrounding the movement of the victim were proven primarily with direct evidence. Jane Doe offered direct testimony concerning the manner in which appellant placed her in a bear hug and pushed her to a more secluded location adjacent to the fence line before she was rescued by her neighbors. Her description of the area was corroborated by videos and photographs. Indeed, in closing argument the prosecutor emphasized that these events were supported by direct evidence. She reminded the jury that "when Jane Doe was testifying, she talked about this particular area on the driveway and she talked about being moved from this area in the driveway back behind these shrubs." According to the

prosecutor, "We know that he moved her a substantial distance and that that movement increased the risk of harm to her. Straightforward." Any circumstantial evidence concerning appellant's movement was incidental or largely corroborative of the direct evidence.

Consequently, we conclude that appellant's intent was the only element that rested substantially or entirely on circumstantial evidence. CALCRIM No. 225, which instructed the jury how to evaluate circumstantial evidence with regard to intent, was the proper instruction. (*Samaniego*, *supra*, 172 Cal.App.4th at p. 1172.) Therefore, the trial court did not err by instructing the jury with CALCRIM No. 225 instead of CALCRIM No. 224.

### D. Failure to Award Conduct Credit

With respect to his sentence, appellant challenges the denial of conduct credits by the trial court. Appellant contends that the trial court erred by denying conduct credit of 115 days, representing 15 percent of his presentence time of 773 actual days. Respondent agrees.

Appellant received total credits for 773 days spent in pretrial custody, consisting of 552 days while his competence to stand trial was being evaluated, plus 221 actual days. However, he was awarded no days of conduct credit. Appellant claims he was entitled to 15 percent conduct credit for the entire period of pretrial confinement. Respondent concedes, and we agree, that in a case such as this, "there is no reason to deny conduct credits of fifteen percent pursuant to section 2933.1 . . . ."[7] Respondent suggests that "the appellate court may perform the calculation and order the abstract of judgment to be corrected accordingly." We therefore order the abstract of judgment amended to show an additional 115 days of presentence conduct credit, for a total award

---

[7] Persons who have been convicted of certain qualifying violent felonies are subject to a restriction upon the conduct credit that may be earned by such persons during presentence incarceration and applied against a term of imprisonment. (§ 2933.1, subd. (c).) (*In re Pope* (2010) 50 Cal.4th 777, 781-782.) Because appellant was convicted of a violent felony, his conduct credits were limited to 15 percent. (*Ibid.*)

of 888 days credit for presentence confinement (773 days of actual credit, plus 115 conduct days).

## IV.
## DISPOSITION

The judgment is affirmed.  However, the abstract of judgment is ordered amended to show 115 additional days of presentence conduct credit.


_____
RUVOLO, P. J.


We concur:


_____
REARDON, J.


_____
RIVERA, J.