[No. B077871. Second Dist., Div. Two. Apr. 12, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
LEONARD CURTIS SMITH, Defendant and Appellant.

COUNSEL

Charlotte E. Costan, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, William T. Harter and William V. Ballough, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

NOTT, J.—We are ordered to vacate our decision of October 26, 1994, and to reconsider the cause in light of *People* v. *Rayford* (1994) 9 Cal.4th 1 [36 Cal.Rptr.2d 317, 884 P.2d 1369].

Appellant Leonard Smith appeals from a judgment entered after a jury convicted him of counts 1 and 2 for forcible rape (Pen. Code, § 261, subd.

(a)(2)),[1] count 3 for forcible oral copulation (§ 288a, subd. (c)), and count 4 for residential robbery (§ 211). The jury found true the allegations that appellant used a weapon and kidnapped the victim within the meaning of section 667.8, subdivision (a) in connection with the first three counts.[2] The trial court found that appellant had suffered prior convictions for first degree robbery and attempted arson within the meaning of sections 667, subdivision (a) and section 667.5, subdivision (b). Appellant was sentenced to a total of 31 years, 8 months. Imposition of sentence pursuant to section 667.8, subdivision (a) was stayed on counts 2 and 3. The trial court imposed two 5-year enhancements for the section 667, subdivision (a) findings and two 1-year enhancements for the section 667.5, subdivision (b) findings.

We affirm in part and reverse in part.

## CONTENTIONS

Appellant contends that (1) the movement of the victim was insufficient to constitute a simple kidnapping, (2) there was insufficient evidence that appellant took money from the victim through force or fear, (3) the trial court erred in failing to instruct on theft as a lesser included offense of robbery, (4) the jury's finding of first degree robbery must be set aside because the taking of property occurred in a camper rather than a trailer coach, (5) the additional section 667.8, subdivision (a) enhancements should be stricken because section 667.8, subdivision (a) permits only one kidnap for rape enhancement per kidnap, and (6) the section 667.5, subdivision (b) enhancements should be stricken because cumulative punishment for individual prior convictions are barred.

## FACTS

On June 26, 1992, the victim, 14-year-old Ofrue O., returned home from the skating rink past her midnight curfew. She left the house between 12:30 a.m. and 1 a.m. after arguing with her father about the curfew violation. Ofrue went to a bus stop, and attempted to call her friend Gina. She then took a bus to Gina's house, but Gina was not there. Around 3 a.m., she called another friend to pick her up. While she was waiting, appellant approached her and asked her if she wanted to buy an iron. He then left and returned to ask if she wanted to buy discount bus passes. He said he had a little girl her age and that she should not be out at this time of night. Because of those statements, Ofrue trusted him. Ofrue then accompanied appellant to his house where he said she could use his phone, but she did not go inside.

---

[1] All subsequent code section references shall be to the Penal Code unless otherwise stated.

[2] The jury found a weapon use allegation not to be true as to count 4, first degree robbery.

While Ofrue remained on the driveway, appellant walked into the house and returned with a knife. He urged her, "Go to the back, go to the back." Holding her arm, he held the knife against her back and walked her down the driveway behind the house to a camper attached to a pickup truck. Appellant told Ofrue to go inside the camper or he would kill her and put her body in a trash can. After Ofrue entered the camper, appellant told her that if she did not take off her clothes, he would let eight men "train on her" or trade her to a drug house for $20 worth of crack. Ofrue then removed her pants and, still holding the knife, appellant had sexual intercourse with her on the bed. Appellant then forced her to orally copulate him. Appellant then told Ofrue to turn her back to him and he again had sexual intercourse with her. Throughout, Ofrue told appellant that she did not want to get AIDS or get pregnant, hoping he would put the knife down to get a condom. Appellant eventually put the knife in a crack between the counter and the stove. When he turned away, Ofrue grabbed the knife and stabbed appellant in the back, while screaming continuously. Appellant wrestled the knife away by biting Ofrue on the cheek. Appellant told Ofrue to shut up. Pointing the knife in her direction, he said he needed pain killers, and took $20 out of her jeans pocket and left. Ofrue left, got change from a liquor store, took a bus a few blocks and called a friend to pick her up.

Officer Michael Albert testified that he interviewed Ofrue, who reported that she had been raped and had stabbed appellant in the back. He arrested appellant based upon Ofrue's description. At the time of his arrest, appellant spontaneously stated: "She told me to use a rubber and then she stabbed me. She told me she was 18 or 19."

### DISCUSSION

### I.  *The Kidnap for Rape Enhancements Were Supported by Sufficient Evidence*

■  Appellant first urges that there was insufficient movement of the victim to support a section 667.8, subdivision (a) enhancement for simple kidnapping. We disagree.

We first note that this case presents an anomaly in that the trial court granted appellant's section 995 motion setting aside a count for kidnapping in violation of section 207, subdivision (a) on the basis that the distance from the street to the camper was not a substantial distance as a matter of

law.[3] On the other hand, the trial court denied appellant's motion to set aside the section 667.8 subdivision (a) enhancement which includes within its definition a kidnap under section 207, subdivision (a). Section 667.8, subdivision (a) enhances by an additional term of three years the term imposed against a person convicted of a felony violation of sections 261, 264.1, 286, 288a, or 289, who, for the purpose of committing that sexual offense, kidnapped the victim in violation of section 207.[4]

In analyzing whether the asportation of the victim in the instant case constituted kidnapping, we are limited by the statutory language of section 667.8, subdivision (a) which contains within its definition a violation of section 207.

Because the California Supreme Court in *People* v. *Rayford, supra,* 9 Cal.4th 1, disapproved the application of the section 207 simple kidnapping asportation test to a section 208, subdivision (d) violation as set forth in *People* v. *Bradley* (1993) 15 Cal.App.4th 1144 [19 Cal.Rptr.2d 276], we cannot rely upon *People* v. *Bradley* as support for our conclusion that the distance of 40 feet was sufficient under section 207. However, we conclude that under other case law, the movement of the victim was sufficient under section 207, subdivision (a).

In *People* v. *Rayford, supra,* the court stated that "[t]he asportation requirement for simple kidnapping is less stringent than that for aggravated kidnapping, and less clear. We have stated that certain factors other than the actual distance a victim is moved are not to be considered. [Citation.] However, we have resisted setting a specific number of feet as the required minimum distance, and have further required that the movement must be 'substantial in character,' while offering little guidance as to what that term means." (9 Cal.4th 1, 14.)

The movement in a section 207 crime must not be merely incidental; it must be substantial, that is, more than slight or trivial. (*People* v. *Stanworth* (1974) 11 Cal.3d 588, 600-601 [114 Cal.Rptr. 250, 522 P.2d 1058].) There exists no "bright line" test for simple kidnapping. (*People* v. *Sheldon* (1989) 48 Cal.3d 935, 953 [258 Cal.Rptr. 242, 771 P.2d 1330].) However, consideration may be given to locations and boundaries traversed, the distance of

---

[3]Section 207, subdivision (a) provides: "Every person who forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county, is guilty of kidnapping."

[4]It appears to us that the proper crime with which appellant should have been charged was section 208, subdivision (d), which criminalizes the kidnapping of a person with the intent to commit rape, oral copulation, sodomy, or rape by instrument. That section would have been available since it was added in 1990.

movement in context with the purpose served, and the locations involved. (*People* v. *Stender* (1975) 47 Cal.App.3d 413, 421-423 [121 Cal.Rptr. 334]; *People* v. *Stanworth, supra*, at p. 604.) Indeed, in *People* v. *Rayford, supra*, 9 Cal.4th at page 19, footnote 10, the court cited *People* v. *Sheldon, supra*, at pages 952-953 as ". . . one of our own cases [that] has implicitly examined the character of the movement as well as the actual distance in determining whether there was sufficient evidence of asportation for simple kidnapping."

In *People* v. *Williams* (1990) 220 Cal.App.3d 1165, 1171 [269 Cal.Rptr. 705], sufficient evidence of a substantial distance was found where two women were forced to drive one block which measured eight hundred forty feet long. The court stated that the movement could not be considered trivial, that the women were forced down a major street in a large town, and that the late hour of the evening offered the victims their last chance for escape.

In *People* v. *Magana* (1991) 230 Cal.App.3d 1117 [281 Cal.Rptr. 338], the victim was accosted by the defendant while she was walking home from work. He forced her to a nearby park where he raped her. The court found that the half-mile walk to the park was substantial, and not merely incidental to the rape.

Similarly here, the movement of Ofrue was not merely incidental to the rape in that it was not necessary to move Ofrue in order to perpetrate the rape. At a late hour, she was forced 40 to 50 feet from a driveway, which was open to street view, to the interior of a camper located at the bottom of a driveway behind a house.

Citing *People* v. *Caudillo* (1978) 21 Cal.3d 562, 572 [146 Cal.Rptr. 859, 580 P.2d 274] (overruled on other grounds in *People* v. *Escobar* (1992) 3 Cal.4th 740, 752 [12 Cal.Rptr.2d 586, 837 P.2d 1100]), appellant urges the movement was insufficient under section 207, subdivision (a). However, *Caudillo* is distinguishable. There, the victim was moved an unspecified distance from an elevator, to a storage room, then to her apartment. No real boundaries were crossed as the victim was moved from semiprivate locations located on the same floor of a multiunit building. Appellant also cites *People* v. *Green* (1980) 27 Cal.3d 1, 66-67 [164 Cal.Rptr. 1, 609 P.2d 468] and *People* v. *Daly* (1992) 8 Cal.App.4th 47, 57 [10 Cal.Rptr.2d 21] for the proposition that distances of 25 to 90 feet are insufficient as a matter of law under section 207. In *People* v. *Green*, the court reversed the jury's finding that the defendant was guilty of simple kidnapping under section 207, subdivision (a). That fact situation is also distinguishable. There, the victim was forced by her husband to walk at gunpoint from a car already parked in a secluded location to another spot 90 feet away where he then had sexual

intercourse with her and killed her. Similarly, in *People* v. *Daly, supra,* defendant moved the victim 40 feet across a parking structure in an attempt to get her into her van. Finding that the entire movement was within the parking structure, the court concluded that the movement was insufficient and reduced the kidnapping conviction under section 207, subdivision (a) to attempted kidnapping.

Therefore, applying the analyses of *Williams* and *Magana*, we determine that the movement was sufficient under section 207, subdivision (a), and hold that the three-year enhancement imposed pursuant to section 667.8, subdivision (a) on count 1 was proper.

## II. Sufficient Evidence Existed That Appellant Took Ofrue's Property Through Force or Fear

Section 211 provides that "[r]obbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." The element of force or fear is satisfied if the force or fear caused the victim to give up his or her property. (*People* v. *Brito* (1991) 232 Cal.App.3d 316, 325 [283 Cal.Rptr. 441].)

Although appellant cites cases for the proposition that force or fear was not applied to induce Ofrue to give up her property, we conclude otherwise. In those cases, the intent to steal arose after the force had been used against the victim or the circumstances revealed the absence of force or fear. (*Rodriguez* v. *Superior Court* (1984) 159 Cal.App.3d 821, 826 [205 Cal.Rptr. 750]; *People* v. *Welsh* (1936) 7 Cal.2d 209, 212 [60 P.2d 124].) Here, Ofrue attempted to hide $20 by taking it out of her jeans pocket and putting it in her sock. Appellant saw her do this, said that he would not steal her money, and that she could put it back in her sock. After appellant raped Ofrue, and put the knife down, Ofrue stabbed him in the back. Appellant wrestled the knife away from her, bit her on the cheek, and told her to stop screaming, saying: "Shut up because those guys out there told me to come get you and if you don't be quiet, they will come in an just act like nothing happened because they think you are my girlfriend so that they think we are having a fight." With the knife positioned towards Ofrue, appellant said that the pain was killing him, and took the $20 from Ofrue's jeans pocket. At that time, Ofrue was still on the bed.[5]

We find that sufficient evidence existed of the use of force or fear to deprive Ofrue of her money.

---

[5]We note that the jury found not true the allegation that appellant used a weapon in commission of the robbery. However, this does not obviate a finding that under the totality of the circumstances, appellant used force or fear to take the $20 from Ofrue.

### III. *The Failure to Sua Sponte Instruct on the Lesser Included Offense of Theft Was Not Prejudicial Error*

■ The trial court must instruct on a lesser included offense when the evidence raises a question as to whether all of the elements of the charged offense are present, and there is sufficient evidence to justify a conviction of a lesser offense.[6] (*People* v. *Turner* (1990) 50 Cal.3d 668, 690 [268 Cal.Rptr. 706, 789 P.2d 887].) ■ Theft is a lesser and necessarily included offense of robbery, which latter offense includes the element of force or fear. (*Ibid.*)

■ Here, a statement made by appellant was read into the record. After stating that Ofrue stabbed him after consensual sex, and he had to bite her on the cheek to get her to let go of the knife, appellant maintained that Ofrue offered him $10. Appellant was to take the $20 and bring her change back. Appellant then went to a dope house, but was refused the change, so he spent the $20 on cocaine. Appellant now urges that there was evidence that he did not use force or fear to obtain the money from Ofrue.

We disagree that under the scenario presented by appellant, the trial court erred in failing to instruct on the lesser included crime of theft. ■ A lesser included offense instruction must be given sua sponte only when the evidence adduced at trial calls for and justifies it. (*People* v. *Pijal* (1973) 33 Cal.App.3d 682, 691 [109 Cal.Rptr. 230].) ■ Under appellant's version of the facts, he converted the extra $10, for which Ofrue would have a civil remedy. Doubtless, appellant failed to request the theft instruction because it was inconsistent with his version of the facts. We conclude that the trial court had no duty to give a sua sponte instruction on theft which would have conflicted with the defense.

However, even if the failure to instruct on theft were error, whether that was prejudicial depends on whether " 'it is possible to determine that . . . the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions. . . .' " (*People* v. *Turner, supra,* 50 Cal.3d at p. 690.) In *Turner,* the defendant testified that he killed the victim in a spontaneous reaction to the victim's homosexual advances, and only then decided to take the victim's property. Our Supreme Court determined that the failure to give the lesser included instruction of theft was not prejudicial because the jury was given special instructions highlighting the issue of "after-formed intent." Thus the

---

[6]Our review of the record does not show that appellant requested such an instruction.

admonishments showed that the jury necessarily concluded that defendant decided to steal before committing the assaults on the victim.[7]

Likewise, in this case, the jury received a special instruction highlighting the after-formed intent issue.[8]

We assume, arguendo, that appellant's statement indicates that he formed the intent to steal after he was unable to return change to Ofrue. On the other hand, Ofrue's testimony shows that appellant forced her to stop screaming by threatening her and immediately thereafter positioned a knife toward her while he took the $20.[9] Accordingly, the pertinent instructions, *all* requested by appellant, indicate that the jury must have found that appellant formed the intent to steal, through force or fear, before depriving Ofrue of her property. That is, if the jury had credited appellant's statement, he would have been absolved under the instructions. By convicting appellant of robbery, the jury showed that it believed Ofrue's testimony.

Accordingly, we reject appellant's claim of reversible error.

---

[7]The court admonished the jury that " '[a]n act of force accompanied by a theft does not constitute robbery unless the act of force was motivated by an intent to steal. If the intent to steal does not arise until after force has been used against the victim, no robbery has taken place. [¶] If an individual kills for reasons unrelated to theft, for example, because of anger, fear, or revenge, and then decides to take advantage of the situation by stealing some object from the person of the decedent, the taking will constitute at most a theft and not a robbery.' " (*People* v. *Turner, supra*, 50 Cal.3d at p. 691, italics omitted.)

[8]CALJIC No. 9.40 reads: "Defendant is accused in Count 4 of the information of having committed the crime of robbery, a violation of Section 211 of the Penal Code. [¶] Every person who takes personal property in the possession of another, against the will and from the person or immediate presence of that person, accomplished by means of force or fear and with the specific intent permanently to deprive such person of such property, is guilty of the crime of robbery in violation of Penal Code Section 211. [¶] In order to prove such crime, each of the following elements must be proved: [¶] 1. A person had possession of property of some value however slight, [¶] 2. Such property was taken from such person or from her immediate presence, [¶] 3. Such property was taken against the will of such person, [¶] 4. The taking was accomplished either by force, violence, fear or intimidation, and [¶] 5. Such property was taken with the specific intent permanently to deprive such person of the property."

CALJIC No. 9.41 reads: "The element of fear in the crime of robbery may be either: 1. The fear of an unlawful injury to the person or property of the person robbed, or to any of her relatives or family members, or [¶] 2. The fear of an immediate and unlawful injury to the person or property of anyone in the company of the person robbed at the time of the robbery."

The following instruction, paraphrased from *People* v. *Green, supra*, 27 Cal.3d 1, 54, was also given: "The act of force or intimidation by which the taking is accomplished in a robbery must be motivated by the intent to steal, that is, to permanently deprive the owner of his property. If this intent does not arise in the mind of the perpetrator until after the force has been used against the other person, there is no robbery."

[9]We do not credit appellant's argument that there was evidence that he could have had a calm conversation with Ofrue, then simply removed the $20 from the jeans pocket and walked out the door.

### IV.  *Appellant Was Improperly Convicted of First Degree Robbery*

█  Appellant urges that since a "camper" is not a building or trailer coach as defined in section 212.5, there was insufficient evidence to support the jury's finding that the theft of Ofrue's $20 was first degree robbery.[10] The court must first look to the plain language of a statute to assess its meaning. (*People* v. *Jones* (1993) 5 Cal.4th 1142, 1146 [22 Cal.Rptr.2d 753, 857 P.2d 1163].)

Section 212.5, subdivision (a) provides in pertinent part that "[e]very robbery . . . which is perpetrated in an inhabited dwelling house . . . [or] . . . a trailer coach as defined in the Vehicle Code which is inhabited, or the inhabited portion of any other building is robbery of the first degree." Vehicle Code section 635 defines trailer coach as "[a] vehicle, other than a motor vehicle, designed for human habitation or human occupancy for industrial, professional, or commercial purposes, for carrying property on its own structure, and for being drawn by a motor vehicle. A 'park trailer,' as described in subdivision (b) of section 18010 of the Health and Safety Code, is a trailer coach." Section 18010, subdivision 4(b) of the Health and Safety Code provides that "[a] park trailer designed for human habitation for recreational or seasonal use only, which meets all of the following criteria [is a recreational vehicle]: [¶] (1) It contains 400 square feet or less of gross floor area measured at the maximum horizontal projections. However, it may not exceed 12 feet in width or 40 feet in length in the traveling mode. [¶] (2) It is built on a single chassis. [¶] (3) It may only be transported upon the public highways with a permit."

On the other hand, Vehicle Code section 243 defines a camper as "a structure designed to be mounted upon a motor vehicle and to provide facilities for human habitation or camping purposes. A camper having one axle shall not be considered a vehicle."

Although the devastating impact on the victim, whether robbed in a trailer coach or in a camper, appears to be the same, we agree with appellant that the Legislature intended to preclude a camper from the definition of trailer coach when defining trailer coach for purposes of robbery. A camper, as defined in section 243 of the Vehicle Code, is expressly included under section 246, which punishes persons who discharge a firearm at an inhabited dwelling house. Additionally, the definition of burglary under section 459 includes both a "trailer coach, as defined in Section 635 of the Vehicle Code" and an "inhabited camper, as defined in Section 243 of the Vehicle

---

[10]Appellant's section 1118.1 motion, made on the ground that the camper did not qualify as a residence, was denied.

Code." Moreover section 460, in distinguishing first degree and second degree burglary, identifies burglary of an inhabited "trailer coach," but not of a camper as burglary in the first degree.

The record shows that when asked whether appellant took her into a trailer or a camper that fits on a car, Ofrue answered: "A camper that fits on a car." The prosecutor then stated: "I have in my hand a picture of what appears to be a camper." While the camper was outfitted with a stove, sink, counter and bed, the record does not reflect whether it had a toilet, and we cannot equate it with the type of trailer coach or other habitation contemplated by the Legislature.

Accordingly, we need not address whether there was sufficient evidence that the camper was inhabited to support a first degree robbery conviction, or whether the trial court erred in giving a "trailer coach" instruction. We conclude that appellant's first degree robbery conviction should be reduced to second degree, and that his sentence should be reduced to one-third the midterm for second degree robbery, or one year. (§ 213, subd. (a)(2).)

V. *The Trial Court Properly Stayed the Section 667.8, Subdivision (a) Enhancements for Counts 2 and 3*

█ We find appellant's argument that the section 667.8, subdivision (a) enhancements should be stricken rather than stayed for counts 2 and 3 to be without merit.

The record shows that the jury found the section 667.8, subdivision (a) allegations to be true as to counts 1, 2, and 3. However, the prosecutor, in its sentencing memorandum, urged that only one section 667.8, subdivision (a) enhancement could be imposed under *People* v. *Hernandez* (1988) 46 Cal.3d 194 [249 Cal.Rptr. 850, 757 P.2d 1013], because only one kidnapping occurred. While appellant cites *People* v. *Hernandez* in support of its proposition that the enhancements should be stricken, in that case the trial court erred in actually imposing multiple enhancements for one kidnapping.

Here, the trial court properly sentenced appellant on the section 667.8, subdivision (a) finding on count 1 to three years consecutive to the count 1 sentence and stayed imposition of sentence on the section 667.8, subdivision (a) findings on counts 2 and 3.

VI. *Appellant's Sentence Should Be Modified by Striking the Two Section 667.5 One-year Prior Prison Term Enhancements*

█ The trial court found that appellant had two prior convictions for serious felonies for which separate prison terms had been imposed. For each

prior, the trial court imposed two 5-year sentence enhancements pursuant to section 667, subdivision (a) and two 1-year enhancements pursuant to section 667.5, subdivision (b) to be served concurrently with the time imposed pursuant to the section 667, subdivision (a) enhancements.

Where multiple statutory enhancement provisions are available for the same prior offense, one of which is a section 667 enhancement, the greatest enhancement, but only that one, will apply. (*People* v. *Jones, supra,* 5 Cal.4th 1142, 1150.)

Accordingly, the enhancements imposed pursuant to section 667.5, subdivision (b) shall be stricken.

### DISPOSITION

We reverse the judgment entered as to appellant's conviction for first degree robbery, which shall be reduced to second degree robbery. The sentence imposed for first degree robbery shall be reduced to one third the midterm for second degree robbery, or one year. The two 1-year enhancements imposed pursuant to section 667.5, subdivision (b) shall be stricken. The trial court shall send to the Department of Corrections a corrected abstract of judgment. In all other respects, the judgment is affirmed.

Boren, P. J., and Fukuto, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 13, 1995.