Filed 6/13/14  P. v. Santos CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E057284 |
| v. | (Super.Ct.No. RIF1105634) |
| MICHAEL SANTOS, | **OPINION** |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John W. Vineyard, Judge. Affirmed in part; reversed in part with directions.

Martin Kassman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Charles C. Ragland, and Kimberley A. Donohue, Deputy Attorneys General, for Plaintiff and Respondent.

Joshua Najera met Thomas Bedolla on a dating website. Najera agreed to meet him at a nearby house. When Najera arrived, defendant took him into a garage, which had been converted into a seating and sleeping area. Defendant, Najera and Bedolla sat together talking. Najera got nervous and got up to leave. Defendant grabbed Najera's cellular telephone. Defendant turned on a stun gun he had behind his back and threatened to "tase" him if he tried to leave. Najera was able to escape and his phone was later found in defendant's backyard. Defendant was convicted of first degree robbery and false imprisonment.

Defendant now contends on appeal as follows: (1) The prosecutor committed misconduct during closing argument; (2) If he waived his claim of prosecutorial misconduct, he received ineffective assistance of counsel; and (3) He was improperly sentenced on the robbery count.

Although the prosecutor committed misconduct, it was not prejudicial. We remand for resentencing in order for the trial court to properly impose the sentence on the first degree robbery conviction.

# I

## PROCEDURAL BACKGROUND

Defendant was found guilty by a Riverside County jury of first degree robbery (Pen. Code, § 211)[1] and false imprisonment (§ 236). The jury found true the allegations for both counts that during the commission of the offenses, defendant personally used a deadly and dangerous weapon, a stun gun, in violation of section 12022, subdivision (b)(1). After waiving his right to a jury trial, in a bifurcated proceeding, the trial court found defendant had served four prior prison terms (§ 667.5, subd. (b)). The trial court sentenced defendant to 11 years and 8 months in state prison.

# II

## FACTUAL BACKGROUND

On November 3, 2011, Joshua Najera visited a website used by homosexual men to make dates and meet friends. Najera met a man named Thomas Bedolla on the website and they spoke online for 15 to 20 minutes. They both discovered they were located less than one mile from each other. Najera agreed to meet up with Bedolla.

Najera drove to the house which was located on Lewis Avenue in Riverside. When he arrived, defendant emerged from a side gate and met him outside. Najera followed defendant back through the side gate and went in a door to the garage. Inside the garage there was a bed, couch, computer and camera mounted on a tripod. Bedolla

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

was sitting on the couch. Najera sat down next to him. Defendant sat across from them, about two feet away.

Najera noticed that it was smoky in the room and he asked them what they had been smoking. They told him that they had been smoking "crack." This made Najera uncomfortable. Najera told them that he was going to leave. Najera stood up to leave. He had his keys in one hand and his cellular telephone in the other hand. Defendant grabbed at his keys but Najera was able to hold on to them. Defendant was able to take his phone.

Defendant got right into Najera's face and told him he could not leave. Najera saw a black object in defendant's hand and he heard a crackling noise which he recognized as a taser. Defendant told him not to do anything to make him "tase" him. Najera had used a taser gun before and was familiar with the sound.

Najera asked Bedolla to help him but he just sat on the couch. Defendant told Najera that Bedolla was his friend and wasn't going to help him. Defendant "smirked" at him. Najera felt that if he tried to take his phone back from defendant, he would use the taser on him.

Najera then jumped over the couch and ran out of the garage. Defendant followed him. Najera stopped for a moment and asked defendant to give him his phone back. Defendant refused and went back to the backyard. Najera walked to a neighbor's house across the street to call the police.

4

Bedolla also testified. Bedolla had been to defendant's house on one occasion prior to November 3, 2011. Defendant had invited him to his house that morning for breakfast. Bedolla talked online to Najera and invited him over to the house.

Bedolla and defendant were in the garage. When Najera arrived, defendant went outside to get him. Najera sat down next to Bedolla. At some point, defendant started getting angry and talked about someone taking money from him. Najera appeared confused and did not seem to know what defendant was talking about. Najera tried to stand up to leave at one point and defendant pushed him on the chest back onto the couch. Bedolla never saw defendant take Najera's phone but he did hear Najera ask defendant to give his phone back.

Bedolla heard a clicking that sounded like an electrical noise coming from behind defendant. Bedolla did not see anything in defendant's hand. Bedolla thought the noise sounded like a taser, which he had heard before on television. Najera jumped over the couch and ran out of the garage.

Najera spoke to the 911 operator and stated that his phone had been stolen. Najera told the operator that "they" tried to keep him in the house by using a taser. They told him he could not leave and then took his phone. Najera also said they were smoking crack. Najera heard a zapping noise and saw something black in the right hand of the person who took the phone. Najera advised the operator that he believed the men were still in the house.

5

At approximately 9:30 a.m., Riverside Police Officer Cristina Arangure responded to Najera's 911 call. When Officer Arangure arrived, Najera was across the street from defendant's house and waved her down. Najera was shaking and was scared. Najera told her that he had been robbed and the suspects were still across the street. A helicopter arrived and made an announcement that the occupants of the house should step outside. Two males stepped out into the backyard but then went back in the house. Eventually, defendant's brother let the police officers into the house. Defendant and Bedolla were inside the house in a bedroom.

In the garage, Officer Arangure found what she described as a stun gun[2] sitting on a bookshelf. The stun gun was operational. Najera's phone was found inside the branches of a potted plant in the backyard. The area was just outside the door of the garage. Defendant showed the hiding location to Officer Arangure. The phone was returned to Najera. Officer Arangure found three or four other phones in defendant's bedroom. No drugs or paraphernalia were found in the house or garage.

Defendant presented no evidence.

III

PROSECUTORIAL MISCONDUCT

Defendant asserts that the prosecutor committed misconduct during closing argument by vouching for the strength of the case by invoking the prestige and reputation

---

[2] Officer Arangure indicated that a taser has wires that shoot out at the person while a stun gun must be directly placed on a person. The weapon found in the garage did not have wires and was a stun gun.

6

of the district attorney's office. Respondent agrees that the prosecutor committed misconduct but argues that the claim has been forfeited because defense counsel failed to object at the time of the misconduct, and regardless, the misconduct was not prejudicial. Defendant contends that if we find that his claim has been forfeited, he received ineffective assistance of counsel.

A.   *Additional Factual Background*

During the opening argument, the prosecutor argued as follows: "What happened in this case is clear, ladies and gentlemen. What happened is the defendant is guilty as charged, as charged. The charges that were brought by the People in this case are true. Those charges we wouldn't have charged him with them if they were not. The evidence has proven that beyond a reasonable doubt." Defense counsel objected on the ground it misstated the law. The trial court overruled the objection.

B.   *Prosecutorial Misconduct*

"'Under California law, a prosecutor commits reversible misconduct if he or she makes use of "deceptive or reprehensible methods" when attempting to persuade either the trial court or the jury, and it is reasonably probable that without such misconduct, an outcome more favorable to the defendant would have resulted. [Citation.]."**[3]** (*People v. Fuiava* (2012) 53 Cal.4th 622, 679.)

---

**[3]**     We note that defendant specifically states in his opening brief that there was no federal due process violation and makes no claim that his federal constitutional rights were violated by the prosecutorial misconduct. As such, we only evaluate his claim under the California Constitution.

"'"In order to preserve a claim of misconduct, a defendant must make a timely objection and request an admonition; only if an admonition would not have cured the harm is the claim of misconduct preserved for review." [Citation.]'" (*People v. Gonzales* (2011) 51 Cal.4th 894, 920.)

Defendant's counsel objected to the prosecutor's comments but on the ground that it misstated the law, not that it was misconduct. Respondent argues the argument was forfeited by this failure to contemporaneously object and request a jury admonition. Defendant claims that an objection to the argument would have been futile and that an admonition would not have cured the harm. In the alternative, he claims he received ineffective assistance of counsel due to his counsel's failure to properly object. Rather than engage in a lengthy discussion of these issues, and for the sake of judicial economy, we will the address the merits of defendant's prosecutorial misconduct claim.

"[I]t is misconduct for prosecutors to vouch for the strength of their cases by invoking their personal prestige, reputation, or depth of experience, or the prestige or reputation of their office, in support of it. [Citations.]" (*People v. Huggins* (2006) 38 Cal.4th 175, 206-207.) "'Impermissible "vouching" may occur where the prosecutor places the prestige of the government behind a witness . . . or suggests that information not presented to the jury supports the witness's testimony.' [Citation.]" (*People v. Williams* (1997) 16 Cal.4th 153, 257.) "Specifically, a prosecutor's reference to his or her own experience, comparing a defendant's case negatively to others the prosecutor knows about or has tried, is improper. [Citation.] Nor may prosecutors offer their

8

personal opinions when they are based solely on their experience or on other facts outside the record.  [Citations.].”  (*Huggins,* at p. 207.)

In *People v. Alvarado* (2006) 141 Cal.App.4th 1577, the prosecutor stated (in response to attacks by defense counsel alleging improper coaching of a prosecution witness) that she had “a duty and I have taken an oath as a deputy District Attorney not to prosecute a case if I have any doubt that that crime occurred.  [¶]  The defendant charged is the person who did it.”  (*Id.* at p. 1583, italics omitted.)  The appellate court found misconduct because it “impermissibly invited the jury to convict Alvarado based on her opinion that he was guilty and on the prestige of her office . . . . The only reasonable inference from these comments is that (1) the prosecutor would not have charged Alvarado unless he was guilty, (2) the jury should rely on the prosecutor’s opinion and therefore convict him, and (3) the jurors should believe [the witness] for the same reason.”  (*Id.* at p. 1585.)

The comments made in this case are similar to those made in *Alvarado.*  Here, the prosecutor stated in opening argument that the charges would not have been filed by the People if they were not true.  Such statement improperly invoked the prestige of the district attorney’s office and constituted prosecutorial misconduct.

C.    *Prejudice*

Having found that the prosecutor committed misconduct, we must determine whether it was prejudicial.  “[O]ur state law requires reversal when a prosecutor uses ‘deceptive or reprehensible methods to persuade either the court or the jury’ [citation] and “‘it is reasonably probable that a result more favorable to the defendant would have

9

been reached without the misconduct'" [citation]." (*People v. Davis* (2009) 46 Cal.4th 539, 612.)

Here, the evidence that defendant was guilty was overwhelming. Defendant was convicted of first degree robbery. Section 211 defines robbery as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." It is first degree robbery if committed in an inhabited dwelling. (§ 212.5, subd. (a).) "The element of force or fear is satisfied if the force or fear caused the victim to give up his or her property." (*People v. Smith* (1995) 33 Cal.App.4th 1586, 1595.)

Here, Najera was taken by defendant to a small garage where Bedolla was waiting for him. As they sat very close together, Bedolla and defendant disclosed they had been smoking crack, which made Najera nervous. According to Najera, he stood up and tried to leave, but defendant grabbed his phone against Najera's will. Bedolla did not see defendant take the phone but claimed defendant pushed Najera back onto the couch. Thereafter, defendant threatened to use the stun gun on Najera if he tried to leave. Najera felt that if he tried to get the phone back from defendant, he would use the stun gun on him. Strong evidence established that defendant took Najera's phone through the use of force or fear.

Defendant claims that if the misconduct had not occurred, the jury would have found him only guilty of the lesser offense of petty theft which does not require force or fear. However, if a defendant uses force or fear to retain an item, he is guilty of robbery. (*People v. McKinnon* (2011) 52 Cal.4th 610, 686-687.) The evidence clearly established

10

that defendant either took the phone through the use of force, or retained the phone through the use of force or fear. It is not reasonably probable that a result more favorable to defendant would have been reached by the jury if the misconduct had not occurred.

Defendant also complains that if the misconduct did not occur, the jury would have found him not guilty of false imprisonment. He claims that there was "room for reasonable doubt" as to whether he succeeded in confining him for an appreciable length of time. "False imprisonment is the unlawful violation of the personal liberty of another." (§ 236.) It occurs when the defendant intentionally restrains, confines or detains another person without his or her consent for """"an appreciable length of time, however short."""" (*Fermino v. Fedco, Inc.* (1994) 7 Cal.4th 701, 715.) Here, defendant took Najera's phone and then threatened him not to leave while holding a stun gun behind his back. Najera asked Bedolla for help, but he refused. Defendant told him that Bedolla was not going to help him. At that point, Najera escaped. This "short" amount of time was sufficient to establish false imprisonment and it is not reasonably probable the jury would have found otherwise if the misconduct had not occurred.

Defendant points to the fact that the deliberations continued for almost two days in arguing that the misconduct was prejudicial. The deliberations began in the early afternoon at the conclusion of argument, then continued for another day, and finished at some point on the following day. However, the length of deliberations "permits more than a single interpretation of its meaning." (*In re Pratt* (1999) 69 Cal.App.4th 1294, 1322.) Here, based on the totality of the circumstances, the length of deliberations did not necessarily mean that this was a close case.

11

Based on the foregoing, we find that any misconduct committed by the prosecutor was not prejudicial. It follows that if we were to conclude that defendant received ineffective assistance of counsel due to his counsel's failure to object, he could not establish prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687, 694 [prejudice is shown by "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."].) We reject defendant's claim that reversal is warranted.[4]

IV

SENTENCING

Defendant contends the trial court improperly sentenced him on the first degree robbery count and that remand for resentencing is necessary. Respondent agrees remand to the trial court for clarification of the sentence is appropriate.

A.    *Additional Factual Background*

Defendant was convicted of first degree robbery. The probation officer's report stated that defendant was convicted of second degree robbery. As for the exposure calculation, the probation report stated that the robbery was second degree and that the sentencing range was two, three and five years.

In his sentencing memorandum, defendant requested probation, and in the alternative, the low term of two years on the robbery. In its sentencing memorandum, the

---

[4]    Since we conclude that the misconduct in this case is not prejudicial, mandatory reporting of the prosecutor to the California State Bar is not required. (Bus. & Prof. Code, § 6086.7, subd. (a)(2); Cal. Code Jud. Ethics, canon 3D(2).)

12

People stated that the maximum sentence was 15 years but recommended a sentence of 11 years and 8 months. The prosecutor recommended that defendant be sentenced to the *midterm of six years on the first degree robbery*, one year for the use of the stun gun, eight months for the false imprisonment charge, and an additional four years for the prior prison terms.

At the time of sentencing, the trial court first noted it had read the probation report and the sentencing memorandums filed by both defendant and the People. Defendant's counsel stated that the proper sentencing range was two, four and five years because it occurred in a detached garage. Defendant's counsel argued a second degree robbery sentence was appropriate. The trial court responded, "I will say I did see that discrepancy. I went back and looked at the verdict forms signed by the jury, and the verdict was first degree. For whatever reason that may be, they apparently found the elements of first degree, and I have used the sentencing recommendations for that first degree."

The prosecutor responded that defendant should be sentenced on first degree robbery. There was no dispute during the trial as to whether it was first or second degree robbery.

The trial court moved to sentencing. It stated as follows: "In selecting the appropriate prison term for each count, Court has considered the aggravating and mitigating circumstances pursuant to Rules of Court 4.421 and 4.423. As to Count 1, which the Court finds that the principal term, I am going to impose the middle term of six years."

13

B.     *Analysis*

The punishment for the commission of first degree robbery generally is three, four or six years.  (§ 213, subd. (a)(1)(B).)  However, "[i]f the defendant, voluntarily acting in concert with two or more other persons, commits the robbery within an inhabited dwelling house," then the punishment is three, six or nine years.  (§ 213, subd. (a)(1)(A).)  Section 213, subdivision (a)(1)(A) "operates as a sentence enhancement."  (*In re Jonathan T.* (2008) 166 Cal.App.4th 474, 482.)  As a result, in order to be sentenced pursuant to section 213, subdivision (a)(1)(A), the allegation must be pleaded in the information and found true beyond a reasonable doubt by the trier of fact.  (*Ibid.*)

Here, the information did not allege that defendant acted in concert in committing the robbery.  The jury was instructed that in order to find defendant guilty of first degree robbery it must find that, "[t]he robbery was committed in an inhabited dwelling.  A dwelling is inhabited if someone lives there and either is present or has left but intends to return."  The jury did not make a finding that defendant acted in concert when committing the robbery.  Hence, the proper sentencing range was three, four or six years.  (§ 213, subd. (a)(1)(B).)

As noted, the trial court stated that it was imposing the middle term of six years as to first degree robbery.  Remand is appropriate in order for the trial court to resentence defendant on count 1 taking into account the proper sentencing scheme set forth in section 213, subd. (a)(1)(B).

14

V

DISPOSITION

Defendant's convictions are affirmed, as are his sentences for the false imprisonment count, the enhancements and the prior/prison enhancements. His sentence for count 1 is reversed and the matter is remanded to the trial court in order for it to impose the appropriate sentence as stated in this opinion. Once defendant is resentenced, the trial court shall forward of copy of the abstract of judgment to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI
J.

We concur:

HOLLENHORST
Acting P. J.

CODRINGTON
J.