Filed 10/19/15  P. v. Vega CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115~(a)~, prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115~(b)~.  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B259300 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA377776) |
| v. | |
| ARMANDO VEGA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Craig Richman, Judge.  Affirmed in part, modified, and remanded.

Mark S. Givens, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, Jessica C. Owen, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

Defendant and appellant Armando Vega (defendant) was convicted of felony kidnapping (Pen. Code, § 207, subd. (a)(1)[1]).  On appeal, defendant contends that there was insufficient evidence to support the kidnapping conviction; the trial court erred when it denied his motion to strike his prior convictions; and he is entitled to receive 10 additional days of actual custody credit.  We remand the matter for the trial court to modify the judgment and amend the abstract of judgment to reflect that defendant is entitled to receive 1,431 days of actual custody credit.  We otherwise affirm the judgment.

## BACKGROUND

### A.      Factual Background

#### 1.      *Prosecution Evidence*

At sunset on November 3, 2010, Yuli G. left her home to go to work and walked toward a nearby bus stop.  While Yuli was walking, defendant drove a van past her several times, stared at her, and asked her to tell him her name.  Yuli continued walking to the bus stop.  As she did, it became dark outside.

While crossing the street at a crosswalk, Yuli noticed defendant walking closely past her, going in the opposite direction.  Defendant then grabbed Yuli's arms and began pushing her out of the crosswalk toward the sidewalk.  Yuli had an "intense feeling of fear."  She did not know defendant's intentions; she did not know if defendant was going to rape or kill her.  Yuli fought defendant and was yelling.  Defendant repeatedly punched her in the face, pulled her hair, and told her, "Shut up bitch."

---

[1]      All statutory citations are to the Penal Code unless otherwise noted.

As defendant pulled Yuli backward onto the sidewalk, within a few feet from the van, she saw that defendant had parked the van on the side of the road, with the passenger side closest to the street curb. The passenger side sliding door was open, and Yuli saw that the van had no seats and the interior was dark. She became "even more scared."

Defendant tried to push Yuli into his van, but Yuli placed her hips against the front passenger door to prevent him from doing so. Yuli screamed, but defendant put his hand over Yuli's mouth. Yuli bit defendant's hand, causing defendant to remove it from her mouth.

Yuli and defendant continued to fight, and Yuli fell to the ground next to the open sliding door. Defendant attempted to grab Yuli's feet, but she was kicking him. Defendant stopped attacking Yuli; he entered his van and drove away.

Yuli testified that the total distance defendant dragged her—from the crosswalk to the van—was about 28 feet. The trial court later characterized it as Yuli having been "dragged 15, 18, 20 feet . . . ."

People came to help Yuli, and they called the police. Yuli was crying, and her chest, arms, legs, hair, and face were covered with blood. Yuli sustained various bruises and injuries to her ear, face, back, and the inside of her lips. A few days after the incident, her face was swollen around her eyes and she had bumps and bruises on her leg.

Shortly after the incident, the police went to the address corresponding to the van's license plate number provided by witness, and observed a van matching the description of the suspect vehicle parked in front of the residence. The police knocked on the door of the home. Defendant's mother answered the door, said her son was not home, and gave the officers permission to search the residence. The police found defendant on his bed in his bedroom, and they saw that he had an injury to his right hand. Defendant's DNA matched several of the blood samples taken from Yuli's clothes, skin, and defendant's van.

3

### 2. *Defendant's Evidence*

Defendant did not testify or present any evidence in his defense.

## B. Procedural Background

The District Attorney of Los Angeles County filed an information charging defendant with one count of felony kidnapping in violation of section 207, subdivision (a)(1). The District Attorney alleged that defendant had two prior convictions pursuant to section 245, subdivision (a)(1) that qualified under the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)).

Following a trial, the jury found defendant guilty on the charged count, and the trial court found that the special allegations were true. The trial court denied defendant's motion for verdict modification, and motion to dismiss the strike the prior conviction allegations under section 1385 and *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).

The trial court sentenced defendant to state prison for a term of 35 years to life, including two consecutive five-year terms pursuant to section 667, subdivision (a)(1). The trial court awarded defendant custody credit, and ordered him to pay various fees, fines, and penalties. Defendant filed a timely notice of appeal.

## DISCUSSION

## A. Substantial Evidence

Defendant contends that there was insufficient evidence to support the kidnapping conviction because there was no proof that defendant moved Yuli a substantial distance. The parties agree that the sole issue is whether the facts are sufficient to satisfy the asportation element of kidnapping. There was substantial evidence supporting defendant's kidnapping conviction.

4

### 1. Standard of Review

As our Supreme Court stated, "'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.] In so doing, a reviewing court 'presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.]" (*People v. Edwards* (2013) 57 Cal.4th 658, 715.)

Circumstantial evidence and reasonable inferences are included in determining whether there is substantial evidence. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357-358; *People v. Ugalino* (2009) 174 Cal.App.4th 1060, 1064.) In determining whether substantial evidence supports a conviction, "we do not reweigh the evidence, resolve conflicts in the evidence, draw inferences contrary to the verdict, or reevaluate the credibility of witnesses." (*People v. Little* (2004) 115 Cal.App.4th 766, 771, citing *People v. Jones* (1990) 51 Cal.3d 294, 314.)

### 2. Applicable Law

Section 207, subdivision (a), states that, "Every person who forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county, is guilty of kidnapping." (§ 207, subd. (a).) To prove kidnapping, the prosecutor must establish "'(1) a person was unlawfully moved by the use of physical force or fear; (2) the movement was without the person's consent; and (3) the movement of the person was for a substantial distance.' [Citation.] This last element, i.e., that the victim be moved a substantial distance, is called the 'asportation' element. [Citation.]" (*People v. Bell* (2009) 179 Cal.App.4th 428, 435.)

5

"[T]he movement must be 'substantial in character'" to satisfy the asportation element. (*People v. Martinez* (1999) 20 Cal.4th 225, 235.) A substantial distance "means a 'significant amount' as contrasted with a distance that is 'trivial'. . . ." (*People v. Morgan* (2007) 42 Cal.4th 593, 606-607.) Our Supreme Court has "'resisted setting a specific number of feet as the required minimum distance.'" (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1155.) Limiting a jury to considering only "a particular distance is rigid and arbitrary, and ultimately unworkable." (*People v. Martinez*, *supra*, 20 Cal.4th at p. 236.)

In determining whether the movement was substantial in character, the trier of fact "should consider the totality of the circumstances." (*People v. Morgan, supra,* 42 Cal.4th at p. 610; *People v. Martinez*, *supra*, 20 Cal.4th at p. 237.) A jury may "consider not only the actual distance the victim is moved, but also such factors as whether that movement increased the risk of harm above that which existed prior to the asportation, decreased the likelihood of detection, and increased both the danger inherent in a victim's foreseeable attempts to escape and the attacker's enhanced opportunity to commit additional crimes." (*People v. Martinez*, *supra*, 20 Cal.4th at p. 237, fn. omitted.) "We emphasize [however] that contextual factors, whether singly or in combination, will not suffice to establish asportation if the movement is only a very short distance." (*Ibid*.)

The jury is not required to consider the factors that are in addition to the actual distance the victim is moved. (*People v. Martinez*, *supra*, 20 Cal.4th at p. 237.) "While the jury may consider a victim's increased risk of harm, it may convict of simple kidnapping without finding an increase in harm, or any other contextual factors. Instead, as before, the jury need only find that the victim was moved a distance that was 'substantial in character.' [Citations.]" (*Ibid*.)

   3.    *Analysis*

There is evidence that defendant moved Yuli about 15 to 28 feet. That is enough to support the asportation element of kidnapping here. In *People v. Arias* (2011) 193 Cal.App.4th 1428, we found that the movement of the victim 15 feet from outside to

6

inside his apartment "increased his risk of harm in that he was moved from a public area to the seclusion of his apartment" and made it "less likely defendant would have been detected if he had committed an additional crime. These factors support the asportation requirement for kidnapping." (*Id.* at p. 1435; see also *People v. Shadden* (2001) 93 Cal.App.4th 164, 168-169 [movement of victim nine feet to the back of a store meets asportation requirement of kidnapping]; *People v. Smith* (1995) 33 Cal.App.4th 1586, 1594 [movement of victim 40 to 50 feet from driveway "open to street view" to interior of camper sufficient to support enhancement for rape committed during a kidnapping].)

Here, as Yuli was forced toward the parked van and saw that the sliding door was open, she became "even more scared." Although there was no evidence that defendant dragged Yuli inside his van, there is evidence that defendant dragged Yuli immediately next to the open sliding door on the passenger side of his van. As the trial court characterized it, Yuli "[w]as literally at the threshold of the van door . . . ."

Under the facts of this case, defendant's dragging of Yuli next to his van increased the risk of harm to Yuli and decreased the likelihood of detection of defendant's wrongful acts. The van necessarily blocked a person's view from the street, increasing Yuli's "risk of harm above that which existed prior to the asportation, decreas[ing] the likelihood of detection," and increasing defendant's "opportunity to commit additional crimes." (*People v. Martinez*, *supra*, 20 Cal.4th at p. 237, fn. omitted.) In addition, as defendant moved Yuli closer to his van, he was able to put his hand over Yuli's mouth, preventing her from continuing to scream. This also decreased the likelihood of detection of defendant's wrongful acts.

Moreover, because defendant dragged Yuli to the passenger side of his van, the van blocked her access to the street. And because defendant essentially pinned Yuli against the passenger side of the van, it is reasonable to infer that she was unable to access the sidewalk. Thus, by defendant dragging Yuli to the exterior of his van, Yuli's ability to escape decreased, increasing the danger inherent in her attempting do so. (*People v. Martinez*, *supra*, 20 Cal.4th at p. 237, fn. omitted.)

7

There is sufficient evidence to support the kidnapping conviction. Because we affirm defendant's conviction for felony kidnapping, we decline his request to modify his conviction to the lesser-included offense of attempted kidnapping.

**B.      Motion to Dismiss Prior Strike Convictions**

Defendant contends that the trial court erred when it denied his motion to strike his prior convictions alleged under the Three Strikes law. We disagree.

### 1.      *Standard of Review*

We review a trial court's ruling on a request to strike an enhancement under section 1385 for an abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 375.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id*. at p. 377.) It is the burden of party attacking the sentence to demonstrate that the trial court abused its discretion. (*Id*. at p. 376.)

### 2.      *Applicable Law*

Under section 1385, subdivision (a), a "judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed." " "[F]urtherance of justice," requires consideration both of the constitutional rights of the defendant, and the interests of society represented by the People, in determining whether there should be a dismissal. [Citations.]' [Citations.] At the very least, the reason for dismissal must be 'that which would motivate a reasonable judge.' [Citations.]" (*People v. Orin* (1975) 13 Cal.3d 937, 945-946.) The trial court has discretion pursuant to § 1385 to dismiss a prior conviction alleged under the Three Strikes law. (*Romero*, *supra*, 13 Cal.4th at p. 504.)

### 3. *Relevant Proceedings*

Pursuant to section 1385 and *Romero*, *supra*, 13 Cal.4th 497, defendant filed a motion to strike "at least one" of his two prior convictions alleged under the Three Strikes law. Defendant argued that the two prior offenses, which were for assault with a deadly weapon, were committed within a month of each other in 2001, and were the product of his mental illness, instead of a conscious tendency to commit crimes. Defendant also argued that he had family members who "are open to supporting" defendant.

The trial court denied the motion, stating, "I will accept for the sake of discussion that the defendant was suffering from a mental condition that . . . reduced his culpability for the crime. [¶] I do not, however, accept that he has a relatively insignificant record of criminal conduct, based upon the fact that he does have two serious felony strike prior convictions. One involving great bodily injury. [¶] So this is a serious situation. . . . [T]he two convictions were close in time to one another such that ultimately the prison sentence was served concurrently. . . . [¶] Due to the recency of those prior convictions, the nature of the prior convictions, and the nature of the offenses involved or the offense involved in this case I do believe it would be an abuse of my discretion to strike the strike prior convictions and decline to do so."

### 4. *Analysis*

Defendant contends that his mental health issues "appear" to have been the reason for his two prior convictions. Citing only to his counsel's argument before the trial court, and not admissible evidence, defendant argues that when he was approximately 17 years old, he suffered a traumatic brain injury, and his medical records state that he is "low-functioning" and "has difficulty performing activities of daily living." Citing to his probation officer's report, defendant also argues that "upon being charged with those two prior assaults, [he] was found incompetent to stand trial and was committed to Atascadero State Hospital for just over a year." Defendant however did not produce any evidence definitively linking his prior crimes to his mental health issues. As the

9

prosecutor stated at the *Romero* hearing, defendant's attorneys never entered a plea asserting that he was not guilty of his prior convictions because of his mental health problems.

Defendant states that, as a mitigating factor, he has supportive family members. Defendant however fails to explain why they failed to prevent his prior crimes, why they failed to prevent his kidnapping of Yuli, or how they will treat his mental health issues to prevent his acting violently in the future.

The trial court's ruling was neither so irrational nor so arbitrary that a reasonable person could not agree with it. (*People v. Carmony*, *supra*, 33 Cal.4th at p. 377.) Accordingly, the trial court acted within its discretion under section 1385 in denying defendant's motion to the strike his prior convictions.

## C. Correction Regarding Defendant's Actual Custody Credit

Defendant contends, and the Attorney General agrees, that the judgment must be modified, and the abstract of judgment must be amended, to reflect that defendant is entitled to receive 10 additional days of actual custody credit. We agree.

The trial court stated that defendant had served 1,421 days in actual custody, and the minute order, as well as the abstract of judgment, reflect that defendant was awarded 1,421 days of actual custody credit. The trial court's oral pronouncement of judgment, the minute order, and abstract of judgment are in error.

Defendant was in actual custody for 1,431 days. Thus, the judgment should be modified, and the abstract of judgment must be amended, to reflect that defendant is entitled to receive 10 additional days of actual custody credit.

## DISPOSITION

The matter is remanded for the trial court to modify the judgment and amend the abstract of judgment to reflect that defendant is entitled to receive 1,431 days of actual custody credit.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


MOSK, J.


We concur:


TURNER, P. J.


BAKER, J.